STATE EX REL. M'CLEOD, RELATOR, *v.* DISTRICT COURT
ET AL., RESPONDENTS.

(No. 5,294.)

(Submitted April 16, 1923. Decided April 26, 1923.)

[215 Pac. 240.]

*Prohibition — Cities and Towns — Eminent Domain — Power
Limited to Property Within Corporate Limits.*

Prohibition—Writ Lies, When.
  1. The writ of prohibition may issue where it clearly appears that
  the district court has acted without jurisdiction and the remedy
  afforded by appeal is not sufficiently speedy or adequate to grant
  relief.

Eminent Domain—Power may be Exercised, When Only.
  2. Authority to condemn property for a public use must be clearly
  expressed in the law before such right will be allowed.

Same—Cities and Towns—Condemnation of Land Outside Corporate
Limits not Authorized.
  3. In the absence of legislative authority empowering it so to do,
  a city has no right to condemn land outside of its corporate limits
  for a public highway leading to a park owned by it.

Same—Cities and Towns—Condemnation of Land for Highway to Pub-
lic Park not Authorized.
  4. Section 5043, Revised Codes of 1921, conferring the right upon
  cities to accept by gift, deed or devise land for a public park,
  does not by implication clothe it with power to condemn land for
  a public road leading thereto.

Original application for a Writ of Prohibition by the State,
on the relation of Daniel W. McLeod, against the District
Court of the Sixth Judicial District in and for Park County,
and H. J. Miller, Judge thereof. Writ issued.

*Messrs. Gibson & Smith,* for Relator, submitted a brief;
*Mr. Fred L. Gibson* argued the cause orally.

There is nowhere any authority given to a city to condemn
property for a public road outside of the city limits. That
authority is given to the boards of county commissioners of

3. Necessity for legislative authority for municipal exercise of power
of eminent domain, see note in **Ann. Cas.** 1912C, 199.
  Power of eminent domain for municipal purposes, see note in 22
**L. R. A. (n. s.)** 168.

the counties of the state. (Subd. 5, sec. 1622, Rev. Codes 1921.) It will be argued, no doubt, as it was in the district court, that the right to own a park outside the city, given by section 5043, Revised Codes of 1921, an enactment of the legislature of 1917, by implication gives the right to exercise the power of eminent domain to take land for a public road to the same. This contention is not tenable. (Lewis on Eminent Domain, 3d ed., sec. 371.) "A municipal corporation has no inherent power of eminent domain, and can exercise it only when expressly authorized by the legislature." (10 R. C. L., p. 196; 20 C. J. 533.) No power conferred on any corporation, either private or municipal, is to be more strictly construed than the power to exercise the right of eminent domain.

A statute which authorizes a city to take property for streets, sewers, waterworks, electric light lines, street railways or other public purpose, will not authorize the condemnation of land for a spur-track. (*Wise* v. *Yazoo City,* 96 Miss. 507, Ann. Cas. 1912B, 377, 26 L. R. A. (n. s.) 1130, 51 South. 453.) A municipality has no power to condemn property outside the city limits unless the power has been specifically given. (*Mack* v. *Town of Craig,* 68 Colo. 337, 191 Pac. 101; Lewis on Eminent Domain, 3d ed., sec. 371.)

*Messrs. O'Connor & Miller,* for Respondents, submitted a brief; *Mr. James F. O'Connor* argued the cause orally.

Citing: *Maywood County* v. *Maywood,* 140 Ill. 216, 29 N. E. 704; *City of Rockford* v. *Mower,* 259 Ill. 604, 102 N. E. 1034; *Wise* v. *Yazoo City,* 96 Miss. 507, Ann. Cas. 1912B, 377, 26 L. R. A. (n. s.) 1133, 51 South. 453; *Cold Water* v. *Tucker,* 36 Mich. 475, 24 Am. Rep. 601; *Summerville* v. *Waltham,* 170 Mass. 160, 48 N. E. 1092; *McBean* v. *City of Fresno,* 112 Cal. 159, 53 Am. St. Rep. 191, 44 Pac. 358; *Memphis* v. *Hastings,* 113 Tenn. 142, 69 L. R. A. 750, 86 S. W. 609; *McLaughlin* v. *Hope,* 107 Ark. 442, 47 L. R. A. (n. s.) 137, 155 S. W. 910.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an original application for a writ of prohibition. It appears that on February 10, 1923, the city of Livingston, one of the municipal corporations of the state, commenced an action in the district court of Park county against the relator and his wife, Florence McLeod, for the purpose of condemning and taking for a public highway a strip of improved land belonging to the relator, consisting of about one acre. A general demurrer to the complaint having been overruled, the defendant answered, denying the plaintiff's right of condemnation. Upon hearing it was stipulated that the land involved lies outside of the territorial and corporate limits of the city. By judgment entered, the purpose was declared to be for a public use, and the condemnation of the land determined necessary. Commissioners were appointed to ascertain and determine the amount to be paid to the relator.

Although an appeal lies from the findings of the trial court, [1] the remedy may not be adequate, since by the terms of the statute (sec. 9937, Rev. Codes 1921) proceedings are not stayed. The writ of prohibition may properly be issued where the district court has acted without jurisdiction, and the remedy afforded by appeal is not sufficiently speedy or adequate to grant relief. (Sec. 9862, Rev. Codes 1921; *State ex rel. King* v. *District Court*, 24 Mont. 494, 62 Pac. 820; *State ex rel. Marshall* v. *District Court*, 50 Mont. 289, Ann. Cas. 1917C, 164, 146 Pac. 743; *State ex rel. Lane* v. *District Court*, 51 Mont. 503, L. R. A. 1916E, 1079, 154 Pac. 200; *State ex rel. Wooten* v. *District Court*, 57 Mont. 517, 9 A. L. R. 1212, 189 Pac. 233; *State ex rel. Examining and Trial Board* v. *Jackson*, 58 Mont. 90, 190 Pac. 295; *Powhatan Coal Co.* v. *Ritz*, 60 W. Va. 395, 9 L. R. A. (n. s.) 1225, 56 S. E. 257.)

The writ will issue only when it clearly appears that the district court acted without jurisdiction. (*State ex rel. Spalding* v. *Benton*, 12 Mont. 66, 29 Pac. 425.) "It is hardly necessary to state that want of jurisdiction, in some respect, on the part of the court, judge, or tribunal against whom a

writ of prohibition is asked is the only ground upon which it can ordinarily be obtained. As to what constitutes a want of jurisdiction, courts, judges, and lawyers sometimes differ, and there may be some conflict among the decisions, but all agree that it should never be used except to prevent acts which are not within the jurisdiction of the court, officer, or tribunal sought to be restrained. There may be an entire want of jurisdiction, or the judge against whom the writ goes may have jurisdiction of the subject matter of the controversy and of all the parties interested, and yet render a judgment, or make an order in the cause, in excess of his powers. In both cases there is a want of jurisdiction. The difference between the two cases is in respect to form and degree, rather than principle. As regards the cause of action and parties, there may be a total want of jurisdiction and power over both, or over only one. In such cases it is said the proceeding is without jurisdiction. There may be jurisdiction over the subject matter and all the parties, and still a want of power in the court to render a certain judgment; and, if this judgment is rendered, the judge is sometimes said to have abused his jurisdiction or acted in excess of it. Still it is an attempt to act without power, and a lack of power is a lack of jurisdiction." (*Powhatan Coal Co.* v. *Ritz, supra.*)

And the language of Mr. Justice Holloway, speaking for this court in the *Lane Case,* above cited, is quite applicable in the present proceeding: "The existence of a remedy by appeal does not necessarily defeat the right to relief by prohibition. (*State ex rel. Marshall* v. *District Court,* 50 Mont. 289, 146 Pac. 743.) An application of this character is addressed to the sound discretion of this court (*State ex rel. Mackel* v. *District Court,* 44 Mont. 178, 119 Pac. 476); and whenever it is made to appear, as in this instance, that under no conceivable circumstances can the district court render a valid judgment because of a lack of jurisdiction, the discretion should be exercised in favor of issuing the writ, to the end that litigants may

be saved the needless trouble and expense of prosecuting their litigation to a fruitless judgment.''

In our opinion, the facts in this case warrant the issuance of the writ, should it be concluded that the district court is without jurisdiction to adjudge a condemnation of the lands involved.

The only question presented for decision is, whether a city [2, 3] has the power or authority to condemn for a highway outside of its limits, a right of way leading to a public park owned by it, but located beyond its confines.

''Eminent domain is the right of the state to take private property for public use'' (sec. 9933, Rev. Codes 1921); and the Constitution declares it shall never be abridged (sec. 9, Art. XV). It may be exercised in behalf of such public uses *as are authorized by the legislative assembly* (Rev. Codes 1921, sec. 9934); but, before property may be so taken, it must appear that the use to which it is applied *is authorized by law.* (*Id.*, sec. 9937.) The state may thus acquire title to property, *or authorize others* so to do, for a public use, *as by statute provided.* (*Id.*, sec. 30.)

Our statute provides, so far as pertinent here, that eminent domain may be exercised in behalf of the following public uses: ''2. Public buildings and grounds for the use of the state, and all other public uses authorized by the Legislative Assembly of the state; 3. Public buildings and grounds for the use of any county, city, or town, or school district; * * * roads, streets, and alleys, and all other public uses for the benefit of any county, city or town, or the inhabitants thereof, *which may be authorized by the Legislative Assembly.*'' (*Id.*, sec. 9934.)

A city or town is a body politic and corporate, with the general powers of a corporation, and the powers specified, and those necessarily implied by general or special law. (*Id.*, sec. 4955.) Among the enumerated powers of a city or town is the power to condemn private property for opening, establishing, widening or altering any street, alley, park, sewer, water-

way or for other public use *in the city or town* (*Id.,* sec. 5039,
subd. 75). And authority is expressly conferred upon a city to
condemn private lands in order to provide it with an adequate
water supply, and jurisdiction is conferred upon cities "over
the territory occupied by their public works, and over and
along the line of reservoirs, streams, trenches, pipes, drains,
and other appurtenances used in the construction and opera-
tion of such works, and also over the source or stream from
which water is taken, for the enforcement of its sanitary ordi-
nances, the abatement of nuisances, and the general preserva-
tion of the purity of its water supply, with power to enact all
ordinances and regulations necessary to carry the powers
* * * conferred into effect." (*Id.,* sec. 5039, subd. 64.)

Nowhere is any authority given to a city to condemn prop-
erty for a public road outside of its limits. In the absence
thereof, it does not exist. To the board of county commis-
sioners of the several counties of the state is delegated general
supervision over the highways within the several counties.
Power is especially conferred upon them, and it is made their
duty to "contract, agree for, purchase, or otherwise lawfully
acquire the right of way over private property for the use of
public highways, and for that purpose institute, when neces-
sary," condemnation proceedings. (*Id.,* sec. 1622, subd. 5.)

"Authority to condemn property for a public use must clearly
be expressed in the law before such right will be allowed."
(*Seattle & Montana Ry. Co.* v. *State,* 7 Wash. 150, 38 Am. St.
Rep. 866, 22 L. R. A. 217, 34 Pac. 551; *State* v. *Boone County,*
78 Neb. 271, 15 Ann. Cas. 487, 110 N. W. 629; *State* v. *Supe-
rior Court,* 36 Wash. 381, 78 Pac. 1011; *People* v. *Sanitary
Dist. of Chicago,* 210 Ill. 71, 71 N. E. 334.)

And the right to own or accept by gift, deed or devise land
[4] for a public park given by section 5043, Revised Codes
of 1921, does not by implication or otherwise confer upon the
city the power of eminent domain in order to establish a public
road leading thereto. Not being conferred expressly or neces-
sarily implied in the language of the statute, it has not been

granted. Nor can it be successfully contended that the city, having been granted the power to accept by gift, deed, or devise land for a public park, may, as a necessary incident of such power, condemn land for a public road leading to it. It will be noted that authority has not been given to a city by statute to condemn lands for a park either within or without the limits; and, not having such power as respects the principal purpose—*i. e.,* the public park—there is nothing upon which to even suggest implied authority to condemn a road leading thereto.

Municipal corporations can exercise the right of eminent domain only to the extent to which the power has been conferred upon them by statute. "Not only must the authority of municipal corporations, or other legislative agents, to take private property, be expressly conferred, and the use for which it is taken specified, *but the power,* with all constitutional and statutory limitations and directions for its exercise, *must be strictly pursued."* (Dillon on Municipal Corporations, 5th ed., sec. 1040. See, also, Lewis on Eminent Domain, sec. 240; *Allen* v. *Jones,* 47 Ind. 438.)

"The authority to condemn must be expressly given or necessarily implied. The exercise of the power being against common right, it cannot be implied or inferred from vague or doubtful language, but must be given in express terms or by necessary implication. When the right to exercise the power can only be made out by argument and inference, it does not exist. 'There must be no effort to prove the existence of such high corporate right, else it is in doubt; and, if so, the state has not granted it.' * * * As a rule, a municipal corporation cannot condemn property beyond its limits, unless authority to do so is expressly given." (Lewis on Eminent Domain, 3d ed., sec. 371.)

"One of the most firmly established principles of the law of eminent domain is that the burden is on the party seeking to exercise the power to show an express warrant from the Legislature. The power of eminent domain will never pass by

implication, and, even when the power has been expressly granted, the grant will be construed strictly against the grantee, and he will not be allowed to take the lands of another unless he comes clearly and unmistakably within the limits of his authority.'' (Nichols on Eminent Domain, 2d ed., p. 987.)

''Not only must the authority of municipal corporations or other delegated legislative agents to take private property be expressly conferred, and the use for which it is taken specified, but the power, with all constitutional and statutory limitations and directions for its exercise, *must be strictly pursued.* The power to condemn private property against the will of the owner is a stringent and extraordinary one, based upon public necessity or an urgent public policy. The rule requiring the power to be strictly construed and the prescribed mode for its exercise in all substantial matters strictly followed is a just one, and should, within all reasonable limits be inflexibly adhered to and applied.'' (Dillon on Municipal Corporations, 5th ed., sec. 1040.)

''The establishment of a municipal corporation by the Legislature and the grant of a charter to the corporation so established containing provisions for the exercise of the usual governmental powers by such a body within its territorial limits does not in itself convey the power to take land by eminent domain in order to carry such powers into effect, and, in the absence of express authority from the Legislature, neither a municipal corporation nor its officers and boards can exercise the power of eminent domain.  *  *  *  When the power to exercise eminent domain for certain purposes is expressly granted to a municipal corporation, land outside its territorial limits cannot be condemned without special authority, and, although land may be taken for purposes necessary to a reasonable enjoyment of those which have been authorized, it cannot be taken for purposes merely incidental to a more convenient or economical operation of the authorized use.'' (Nichols on Eminent Domain, 2d ed., sec. 359.)

"A municipality cannot condemn lands outside its own corporate limits unless the power has been delegated by the Legislature. * * * Conceding that the purpose is a public one, and the authority to condemn would exist if the land was situated within the corporate limits, it sometimes becomes a difficult question to determine whether the statutory authority to condemn inside the corporate limits extends to condemnation of property outside the limits." (McQuillin on Municipal Corporations, sec. 1495.)

"The general doctrine is clear that a municipal corporation cannot usually exercise its powers beyond its own limits. If it has in any case authority to do so, the authority must be derived from some statute which expressly or impliedly permits it. There are cases where considerations of public policy have induced the Legislature to grant such power. * * * In the absence of any sufficient legislation to overcome the difficulty, the power to make provision for outside work, if existing at all, can only be exercised by resorting to contracts to obtain rights and privileges which, within the city, can generally be secured, if necessary, by proceedings *in invitum*." (*Coldwater* v. *Tucker*, 36 Mich. 474, 24 Am. Rep. 601.)

"The jurisdiction of municipal authorities is usually limited to the territory occupied by the corporation. For this reason proceedings in condemnation cannot ordinarily be instituted as to property outside the corporate limits." (*Warner* v. *Town of Gunnison*, 2 Colo. App. 430, 31 Pac. 238.)

A municipal corporation is confined in the exercise of its powers to its territorial limits, and in the absence of special legislative authority it cannot exercise corporate powers outside of those limits. (*Farwell* v. *Seattle*, 43 Wash. 141, 10 Ann. Cas. 130, 86 Pac. 217; *Puyallup* v. *Lacey*, 43 Wash. 110, 86 Pac. 215; *Tacoma* v. *Titlow*, 53 Wash. 217, 101 Pac. 827; *Houghton* v. *Huron Cop. Min. Co.*, 57 Mich. 547, 24 N. W. 820; *Jones* v. *Hines*, 157 Ala. 624, 47 South. 739; *Childs* v. *Columbia*, 87 S. C. 566, 34 L. R. A. (n. s.) 542, 70 S. E. 296; *Loeffler* v. *Chicago*, 246 Ill. 43, 20 Ann. Cas. 335, 92 N. E. 586;

28 Cyc. 605; 19 R. C. L. 796; *Mack* v. *Town of Craig*, 68 Colo. 337, 191 Pac. 101.)

*Manning* v. *City of Devils Lake*, 13 N. D. 47, 112 Am. St. Rep. 652, 65 L. R. A. 187, 99 N. W. 51, is a case in point. In that case it appears that the city of Devils Lake, a municipal corporation, at an election called for that purpose, authorized the issuance of bonds of the city for paying the cost of construction and maintenance of a certain bridge located about five miles outside the corporate limits of the city, and, the sale of the bonds having been advertised, the city was, upon the plaintiff's application, restrained by injunction. It was shown that the bridge would enable residents of the Fort Totten Indian reservation and on lands south of Devils Lake to do their trading and business in the city, and that the increased business was a direct benefit to the city of Devils Lake; that the construction, completion and maintenance of the highway proposed was a commercial necessity to the city; that it would greatly extend the commercial importance in trade of the city, and to an appreciable extent directly benefit every merchant, property owner, taxpayer and resident of the city. The court said: "It must be conceded that the validity of the bonds and warrants in question cannot be sustained unless the city has power to provide for their payment by taxation. * * * 'The right to incur the obligation implies the right to raise money by taxation for payment of the bonds, or, what is equivalent, the right to levy a tax for the purposes for which the fund is to be raised by means of the bonds so authorized.' (*Lowell* v. *City of Boston*, 111 Mass. 454, 15 Am. Rep. 39.) * * * It is proposed to expend funds derived from a sale of these bonds upon a road or bridge which is not a legal highway. Such an expenditure will not authorize the imposition of a tax. * * * Bridges constitute a part of the public highway. (Sec. 1091, Rev. Codes.) Section 1053, Revised Codes, which is a part of Chapter 17 of the Political Code of 1899, commits the power to open highways outside of the limits of incorporated cities, villages, or towns, 'all proceedings rela-

tive thereto,' and 'all matters connected therewith,' to the board of county commissioners or board of township supervisors. * * * The development of the commerce or trade of a city is not a corporate purpose. Instances are numerous where cities have attempted to promote their commercial importance by aiding manufacturing and industrial enterprises through the aid of local taxation, and in every instance the attempted exercise of power, when called in question, has been condemned as unlawful. To bring any particular object within the description of a corporate purpose, 'it must appear to be money necessary to the execution of some corporate power, the enjoyment of some corporate right, or the performance of some corporate duty, as established by law or by long usage.' (*Spaulding* v. *City of Lowell*, 40 Mass. 71.)'' (See, also, *Drain Commissioner* v. *Baxter*, 57 Mich. 127, 23 N. W. 711.)

A somewhat different conclusion was reached in *People ex rel. Murphy* v. *Kelly*, 76 N. Y. 475, involving the construction of a bridge across East River, connecting the cities of New York and Brooklyn. In that case, however, it appears that *there was a special legislative enactment authorizing* the cities of New York and Brooklyn to acquire ownership of the bridge for city purposes. It was therein said: ''Nor can it be said that the indebtedness authorized to be incurred by the cities for the construction of the bridge, was not for a city purpose. It is impossible to define in a general way, with entire accuracy, what a city purpose is, within the meaning of the Constitution. Each case must largely depend upon its own facts, and the meaning of these words must be evolved by a process of exclusion and inclusion in judicial construction. It would not be a city purpose for the city of New York to build a railroad from that city to Philadelphia, or to improve the navigation of the Hudson River generally, between that city and Albany, although incidental benefits might flow to the city. Such works have never been regarded as within the legitimate scope of municipal government. * * * The bridge will be

for the common benefit of all the citizens of both cities, and each citizen will have the same right to use it as every other citizen. It would have been a city purpose if either city had been authorized to build the whole of the bridge, and it is no less so that both are to unite in building it. It has always been the policy of this state for two towns separated by a stream of water to bridge the stream at joint expense, and the construction of such a bridge is a town purpose of each town. If the legislature could not authorize these two cities to incur debt for the construction of this bridge, then it could not authorize towns to incur debts for the construction of bridges over streams dividing them.''

The cases cited and relied upon by plaintiff's learned counsel do not support his contention respecting the right of the city to condemn the land herein involved. (*Maywood Co.* v. *City of Maywood*, 140 Ill. 216, 29 N. E. 704; *City of Rockford* v. *Mower*, 259 Ill. 604, 102 N. E. 1034; *Wise* v. *Yazoo City*, 96 Miss. 507, Ann. Cas. 1912B, 377, 26 L. R. A. (n. s.) 1133, 51 South. 453; *Coldwater* v. *Tucker*, 36 Mich. 475, 24 Am. Rep. 601; *Somerville* v. *Waltham*, 170 Mass. 160, 48 N. E. 1092; *McBean* v. *City of Fresno*, 112 Cal. 159, 53 Am. St. Rep. 191, 31 L. R. A. 794, 44 Pac. 358; *Memphis* v. *Hastings*, 113 Tenn. 142, 69 L. R. A. 750, 86 S. W. 609; *McLaughlin* v. *Hope*, 107 Ark. 442, 47 L. R. A. (n. s.) 137, 155 S. W. 910.) In those cases either the legislature had expressly vested in the city the right of condemnation for particular purpose, or the facts disclose entire lack of application.

In *Wise* v. *Yazoo City*, *supra*, one of the cases cited by counsel for the plaintiff, it was held that power is not conferred upon a municipality to condemn a right of way for a spur-track to convey fuel to a power plant used in connection with its street railways, waterworks, electric light and sewage systems, merely to lessen the expense of such transportation, by a statute authorizing it to take property for streets, sewerage, ways, waterworks, electric light lines, street railways and cer-

tain other purposes named, not including spur-tracks, or other public purpose.

From an examination of our statutory law and of the authorities, we are of opinion that a city has no power to condemn land for a public highway outside of its corporate limits, without express or necessarily implied legislative authorization. No such right has been conferred, and therefore the district court is without jurisdiction to condemn the relator's land. To the county alone such power has been delegated.

A peremptory writ of prohibition will issue forthwith.

*Writ issued.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.