STATE EX REL. WARREN A. DePUY AND EVA S. DePUY, RELATORS AND PLAINTIFFS, *v.* THE DISTRICT COURT OF THE SIXTH JUDICIAL DISTRICT OF THE STATE OF MONTANA, IN AND FOR THE COUNTY OF PARK, AND HONORABLE W. W. LESSLEY, DISTRICT JUDGE PRESIDING, RESPONDENTS AND DEFENDANTS.

No. 10597

Submitted June 11, 1963. Decided August 8, 1963.
Rehearing denied September 5, 1963.
384 P.2d 501

Lyman H. Bennett, Bozeman, Acher & Rankin, Arthur P. Acher (argued orally), Helena, for appellant.

K. M. Bridenstine (argued orally), Helena, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding. Relators petitioned this court for a writ of prohibition to prohibit the district court of the sixth judicial district from proceeding further in a condemnation action. The relators were the owners of land sought to be condemned by the State Highway Commission, hereinafter referred to as the Commission. We issued an alternative writ, return was made, and argument had.

An order of preliminary condemnation was issued by the respondent court. The order was made in a condemnation action brought by the Commission to acquire right of way for the construction of a public highway across the lands of relators and for the relocation of a portion of the Yellowstone Park Branch Line of the Northern Pacific Railroad. At the hearing on necessity before the district court it was shown that the railroad relocation would be immediately contiguous to the highway project and would be part of the actual highway construction.

The physical condition of the area is such that the new highway will require a little over half of the present railroad right of way. This necessitates moving the railroad, which the Commission will do as a part of the highway construction.

The single legal question presented is whether the State can condemn land for the purpose of providing right of way for the railroad to be moved to a new location. The question is raised by the language of R.C.M.1947, § 32-1615, as amended by Section 1, Chapter 180, Laws of 1961. That section reads in part:

"*Rights of way, and other properties, how procured.* The state highway commission shall have the power and authority to lay out, alter, construct, improve and maintain highways in the state of Montana.

"Notwithstanding any other provision of law, the state highway commission shall have the power and authority to acquire, by purchase or any other lawful manner, either in fee or in any lesser estate or interest, any lands or other real property, excluding oil, gas and mineral rights, which it deems reasonably

necessary for present or future state highway purposes. The acquisition of such lands or real property, or interest therein, for such purposes includes, but is not limited to, that which is deemed reasonably necessary by the state highway commission, for any of the following purposes:

"(a)   For rights of way, including those necessary for state highways within cities.

"(b)   For the purposes of exchanging the same for other real property to be used for rights of way or other purposes authorized herein, provided that the same shall not be acquired for such a purpose by condemnation procedures.

"(c)   For deposits of road building materials for reasonably foreseeable future road building purposes and uses, including rock, gravel, sand or earth; provided however that the right of eminent domain shall not be available for the acquisition of any such deposits of road building materials which may then constitute a component part of an existing private business enterprise.

"(d)   For offices, weighing stations, shops or storage yards, buildings, rest areas, informational sites or communication facilities.

"(e)   Parks adjoining or near any state highway, provided that the same shall not be acquired for such a purpose by condemnation procedures.

"(f)   For the culture and support of trees or shrubs which benefit any state highway by aiding in the maintenance and preservation of the roadbed.

"(g)   For drainage in connection with any state highway.

"(h)   For the maintenance of any unobstructed view of any portion of a state highway so as to promote the safety of the traveling public.

"(i)   For the construction and maintenance of stock lanes or trails.

"(j)   For the construction and maintenance or replacement of private or public irrigation systems, private or public drain-

age systems, or natural water or drainage courses made necessary by highway construction.

"(k) For providing land or other real property easements or rights of way for necessary relocation of existing utilities, utility easements or other easements for facilities or purposes then in place, or in effect, upon a proposed right of way.

     \*     \*     \*     \*     \*     \*

"Whenever a part of a parcel of land or other real property is to be taken for state highway purposes and the remainder is to be left in such shape or condition as to be of little market value or to give rise to claims or litigation concerning severance or other damage, the state highway commission may acquire the whole parcel and sell the remainder or exchange the same for other property needed for state highway purposes.

"The authority conferred by this chapter to acquire rights of way, easements, lands or other real property and interest therein for state highway purposes includes authority to acquire for reasonably foreseeable future needs. The state highway commission is authorized to lease unused portions of any lands which are held for state highway purposes and interstate rights of way which are not presently needed for highway purposes on such terms and conditions as the state highway commission may fix and to maintain and care for such property in order to secure rent therefrom. All rent so received shall be deposited in the state highway fund. \*  \*  \*"

It is relators' contention that the proposed condemnation by the State is that prohibited by condemnation procedures in subdivision (b) as an "exchange".

It is the respondent court's position that subdivision (k) permits the State to acquire land for "necessary relocation of existing utilities".

Relators admit that the Railroad could itself condemn relators' land, but assert that it, the Railroad must do so; and that the Commission may not because prohibited by subdivision (b)

above. Relators assert that R.C.M.1947, § 93-401-15, provides that:

*"Construction of statutes and instruments—general rule.* In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; * * *."

Then relators argue that in State ex rel. McLeod v. District Court, 67 Mont. 164, 169, 215 P. 240, it is said that authority to condemn property for a public use must clearly be expressed in law before such a right will be allowed.

Thus relators conclude that subsection (b) above prohibits the Commission from condemning land to relocate a railroad because it is an "exchange".

Significantly, section 93-401-15 above has another clause which reads after that quoted above: "and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

In section 32-1615, subds. (b) and (k) above, it would seem that a conflict exists. This is so if one considers in the relocation of utilities an "exchange for other real property to be used for rights of way or other purposes authorized herein" as used in subsection (b), occurs.

However, if this were taken as literally so, a direct conflict between subsections (b) and (k) occurs, and such would not be "such a construction is, if possible, to be adopted as will give effect to all", as used in section 93-401-15, quoted above.

Section 32-1615, prior to its amendment by Chapter 180, § 1, Laws of 1961, was interpreted by this court in State ex rel. Bartholomew v. District Court, 126 Mont. 183, 186, 248 P.2d 215, to mean that the Highway Commission was the only tribunal authorized by our law to relocate state highways through the power of eminent domain. In that case it was the Washington Power Company seeking to condemn land to relocate the state highway from its reservoir site. We now have the opposite

situation. The Highway Commission is seeking to relocate the railroad. This is the exact situation contemplated by subdivision (k) in section 32-1615 as passed in 1961. It seems clear that this is so, unless by the language of subdivision (b) it was prohibited.

In the history of the Act, which was introduced as House Bill No. 135, and later became Chapter 180, Laws of 1961, subdivision (k) appeared as finally passed without change. On the other hand, subdivision (b) and other subdivisions were amended in Committee of the Whole, and finally in the Senate, Senate Substitute for House Bill No. 135 was introduced and passed. Again, subdivision (k) was unchanged. However changes appeared in language connected with "parks, rest areas, and informational sites" in both the House version and the Senate Substitute for House Bill No. 135. While legislative intent may be nebulous and difficult to ascertain from the course of the Act, we believe it to be clear that the prohibition against eminent domain as used in subdivision (b) was meant to apply to what laymen and legislators felt as a restriction on acquisition of "parks, rest areas and informational sites" and rights of way in connection therewith. These were the matters subject to amendment and change during the course of H.B. No. 135 and Senate Substitute for H.B. No. 135 at the same time and process as subdivision (b) was being changed. Meantime, as remarked before subdivision (k) remained unchanged. This interpretation gives effect to all subdivisions of section 32-1615.

In addition to the above reasoning, we believe section 32-1615 further supports this in other language in that it grants the Commission broad powers to acquire entire parcels and sell the remainder or *exchange* the same for other property needed for highway purposes; also, section 32-1616 permits the Commission powers of disposal.

By what we have heretofore said, it is clear that the district court did have jurisdiction to make and enter a preliminary condemnation order and to conduct further proceedings under

the statutes. Therefore, our alternative writ of prohibition previously issued is vacated and set aside and the matter dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, ADAIR and DOYLE, concur.