No. 87-186

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

MONTANA TALC COMPANY, a joint venture;
MERIDIAN MINERALS COMPANY, a corporation;
and WESTMONT MINING, INC., a corporation,
formerly NICOR MINERAL VENTURES, INC.,
            Plaintiffs and Appellants,
    -vs-

CYPRUS MINES CORPORATION, a Delaware Corp.;
CYPRUS INDUSTRIAL MINERALS CORPORATION, a
Delaware corp.; and UNKNOWN OTHERS,
            Defendants and Respondents.

_____

APPEAL FROM:  District Court of the Fifth Judicial District,
              In and for the County of Madison,
              The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Holland & Hart; Stephen H. Foster argued, Billings,
        Montana
        Davis, Graham & Stubbs; Brian T. Dolan, Joseph P.
        McMahon, Jr. argued, Denver, Colorado

    For Respondent:

        Poore, Roth & Robinson; Urban L. Roth, Thomas M.
        Welsch argued, Butte, Montana

    For Amicus Curiae:

        Gough, Shanahan, Johnson & Waterman; William H.
        Coldiron, Montana Mining Assoc., Helena, Montana

_____

                        Submitted:  October 27, 1987

                        Decided:  December 28, 1987

Filed: _____

_____
                Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

A summary judgment was entered by the District Court, Fifth Judicial District, Madison County, against Montana Talc Company in its effort to obtain by eminent domain open-pit mining excavation rights on real property owned by Cyprus Mines Corporation.

The District Court ruled in essence that an open-pit excavation on the land of another for the purpose of mining an ore body on adjacent land is not an authorized public use under Montana condemnation law; that in this case, Montana Talc Company could not prove that the proposed open-pit excavation was a more necessary public use under § 70-30-111(3), MCA; and that in any event, Montana's Landowner Notification Act gave Cyprus Mines Corporation a right to veto Montana Talc Company's condemnation action.

On consideration, we determine that an open-pit excavation necessary to "backslope" the mining of an ore body is an authorized public use for which condemnation may be had, that the Landowner Notification Act is ineffectual in this case to prevent the condemnation, and we remand this cause to the District Court for further proceedings in accordance with this Opinion.

Montana Talc Company is a joint venture of Meridian Minerals Company and Nicor Mineral Ventures, Inc. (the latter now Westmont Mining, Inc.). Montana Talc Company opened an open-pit talc mine in the Northwest Quarter of Section 9, Township 9 South, Range 1 West, MPM (Section 9) in Madison County.

Cyprus Mines Corporation, Cyprus Industrial Minerals Corporation and Cyprus Minerals Company (collectively Cyprus)

- 2 -

are a competing talc company, well established in the business. Cyprus operates an open-pit talc mine on Section 4 in the same township and range, which section abuts and is immediately north of Section 9. Cyprus owns the surface rights and the mineral rights to Section 4. In addition, it owns the surface rights to Section 9. Cyprus has mined and produced talc from an open-pit mine elsewhere in Section 4 for several decades.

In Section 9, there is a large body of commercial quality talc ore situated just south of the joint boundary of Sections 4 and 9. Montana Talc Company, as a joint venture, has acquired the right to mine the talc ore body in Section 9 by mining lease or like instruments from the owner of the mineral ore body.

The Montana Talc ore body contains 1,535,000 tons of high grade talc ore. It appears from the record that the most efficient, economical and productive method of mining this talc ore deposit is by construction of an open-pit mine. Montana Talc has already excavated 11 acres on Section 9 for that purpose. Montana Talc's engineers have determined that to mine completely the large ore body of talc ore, 35 acres of surface area will be required. Since the ore body is located immediately south of the boundary of Sections 4 and 9, of the 35 necessary surface acres, Montana Talc must obtain 14 adjacent acres in Section 4 owned by Cyprus, and an additional 5 acres in Section 4 to provide the necessary buffer and safety zone around its open-pit.

The perimeter of the surface of an open-pit mine operation is necessarily larger than the perimeter of the ore body that is mined. The sides of the open-pit descend from the perimeter in somewhat conical fashion (depending on land contour and the efficient removal of ore), to the underlying ore body. The angle of the slope of the sides of the pit is

determined principally by two considerations, the width of roads necessary for vehicles to transport the mined ore from the bottom of the pit along the sides of the pit to the surface, and an angle of repose sufficient to support the roads and to keep the sides of the pit (backslope) from sloughing or subsiding into and upon those working in it.

In this case, as the proposed open-pit would be widened and deepened, the roads along the sides of the pit (backslope) would provide access to the ore body and a means of removing ore and overburden and safely transporting men and equipment to and from the ore body.

Montana Talc has attempted to obtain from Cyprus by purchase or otherwise, such real estate interest as may be necessary for the construction of its open-pit mine, extending into Section 4. Cyprus has refused to negotiate, and has indicated it would never freely consent.

A further complicating factor is that Cyprus has found a talc ore body in Section 4 which is near the south boundary of the section. It contends that the open-pit excavation proposed by Montana Talc would expose its newly-found ore body on Section 4. Cyprus contends that it has begun plans to mine that ore body and that its right to do so, where it owns both the surface and the underlying minerals cannot be usurped through condemnation for Montana Talc's open-pit. In its attempt at negotiation with Cyprus, Montana Talc has offered to stockpile, jointly mine or otherwise protect Cyprus' rights to such talc ore as its open-pit might encounter.

Montana Talc began mining its ore body in 1984. After negotiations with Cyprus failed, it began this action in the Madison County District Court for the purpose of condemning so much of the Section 4 surface, above described, as would be necessary for its open-pit operation to mine the ore body

- 4 -

in Section 9. The District Court, by summary judgment, denied condemnation to Montana Talc on the grounds we have earlier stated and so the cause comes to us now on Montana Talc's appeal.

For the purposes of our discussion, we will assume that Montana Talc Company as a joint venture stands in the shoes of the owner of the talc ore body in Section 9. To maintain clarity, we will refer to Montana Talc as the owner of that ore body.

Is the Construction of a Backslope for an Open-Pit Mine an Authorized Public Use Under Montana Condemnation Law?

The District Court concluded that the rim of Montana Talc's existing open-pit mine on Section 9 could not be expanded over and upon the surface of Section 4 under Section 70-30-102(15), MCA, unless the condemnor owned the minerals in Section 4. It further concluded that the roads along the backslope of an open-pit mine could not be considered "roads" essential to the operation of the condemnor's open-pit mine as a public use under § 70-30-102(5), MCA.

In support of the District Court, Cyprus contends: that in order to obtain condemnation, Montana Talc must find the authority in the clear language of the eminent domain statutes; that the condemnation statutes must be strictly construed, Kipp v. Davis-Daly Copper Company (1910), 41 Mont. 509, 110 P. 237; that there is no implied authority given to Montana Talc in either subsections (5) or (15) to condemn the subject property; that a "backslope" is not a "road" under subsection (5) and that eminent domain authority under subsection (15) is limited to the surface under which Montana Talc is the owner of the minerals.

We take it as given that private individuals and corporations have no inherent power of eminent domain. For them as for state agencies, the authority to condemn, if any,

- 5 -

must derive from a legislative grant. State Highway Commission v. Crossen-Nissen Company (1965), 145 Mont. 251, 400 P.2d 83. As with all statutes, when we construe those granting the power of condemnation, the intention of the legislature is to be pursued, if possible. Section 1-2-102, MCA.

Public uses for which the power of eminent domain is granted under Montana law are enumerated in § 70-30-102, MCA. So far as pertinent to this case, it provides:

> [T]he right of eminent domain may be exercised in behalf of the following public uses:
>
> . . .
>
> (5) roads, tunnels, ditches, flumes, pipes, and dumping places for working mines, mills, and smelters for the reduction of ores; . . . also an occupancy in common by the owners or the possessors of different mines of any place with a flow, deposit or conduct of tailings or refuse matter from their several mines, mills or smelters for reduction of ores . . .
>
> . . .
>
> (15) to mine and extract ores, metals, or minerals owned by the plaintiff located beneath or upon the surface of property where the title to said surface vests in others . . .

Under the plain language of subsection (15) above, the proposal to mine its talc ore body by Montana Talc is completely within the definition of a public use. Montana Talc proposes "to mine and extract ores" from "minerals owned by the plaintiff located beneath or upon the surface of property where the title of said surface vests in others." Cyprus is the surface owner of Section 9. Montana Talc is the mineral owner of the talc ore body under Section 9. There is a clear legislative enumeration in subsection (15) under the facts here, that Montana Talc's proposed mine is a

- 6 -

public use. For the purpose of mining that ore body, Montana Talc therefore has the power of eminent domain.

Cyprus argues that the surface to be condemned must be directly over the ore body, and, apparently, that the right of surface condemnation cannot go beyond the surface ownership directly overlying the ore body. Cyprus strongly argues on appeal that in order to uphold Montana Talc's position, there must be a resort to speculation and inference to find in the statutes the power of eminent domain for Montana Talc. Yet, the opposite here is true: it would be speculation and inference for this Court to insert "surface ownership directly overlying the ore body" in subsection (15) or "up to but not exceeding, the surface ownership overlying the ore body." We may not, in ascertaining the meaning of statutes "insert what has been omitted or omit what has been inserted." Section 1-2-101, MCA.[1]

Further, Cyprus' argument that only the surface ownership overlying the ore body can be condemned is refuted by § 70-30-103, MCA. Once a public use is determined under § 70-30-102, MCA, the private property which may be taken therefor includes "all real property belonging to any person." Section 70-30-103(a), MCA. The right of condemnation, once a public use is determined, cannot be delimited by section lines, fences or different ownerships. All real property belonging to any person can be taken to satisfy the public use.

Cyprus has also argued in brief that the nature of the estate that Montana Talc seeks to condemn is unclear, that is

---

1    Cyprus argues in brief that it could take away Montana Talc's power of condemnation by simply deeding to Montana Talc the surface that overlies the ore body. (However that may be, we do not accept the argument.)

- 7 -

whether it seeks from Cyprus a fee simple or something less. That, however, is no obstacle. Section 70-30-104, MCA, provides that the estates subject to be taken for public use include "such estate or rights as may be necessary up to and including a fee simple when taken for . . . the mining and extracting of ores, metals, or minerals when the same are owned by the plaintiff but located beneath or upon the surface of property where the title to said surface vests in others . . ."

We find in subsection (15) above, and related statutes the intention of the Montana legislature to encourage the development of the mining industry. Understandably so, because the mineral wealth of this Treasure State, so named for its huge store of minerals taken and yet to be taken, is a prime springhead of past and future economic increase for Montanans. In keeping with this outlook, the legislature has given to mining concerns the awesome power to condemn private property for public use in return for just compensation where the ownership of the minerals and of the surface do not coincide. So it is that in addition to the power of condemnation for the mine itself under subsection (15), there is further power for the construction of roads, tunnels, ditches and other appurtenances necessary to the mining effort in subsection (5). Expansion, and not restriction, appears to be the legislative watchword. This approach is historic as witness the statement of this Court in Butte Anaconda and Pacific Railway Company v. Montana Union Railway Company (1895), 16 Mont. 504, 536-37, 41 P. 232, 243:

> It is well to bear in mind, in the application of the principles underlying the law of eminent

Under the facts of this case, Montana Talc's proposed mine is clearly a public use.

- 8 -

domain, that the state has an inherent political right, pertaining to sovereignty and founded on what has been expressed to be a "common necessity and interest," to appropriate the property of individuals to the great necessities of the whole community where suitable provision is made for compensation.. . . The public welfare is therefore the particular base upon which must be laid the correct application of the doctrine itself. The right of eminent domain may be of the greatest value to the respondent, or to any other corporation which may exercise its privileges, but that is an incident which must be subordinated by the courts to the question of public use, and to the consideration of the benefits to accrue to the public by the construction of the contemplated project. There is, however, a rule of construction, sustained by the great weight of well-considered authority, to the effect that this power to take the property of private citizens or other corporations for public use must be exercised and can be exercised only so far as the authority extends, either in terms expressed by the law itself, or by implication clear and satisfactory. (Citing authority.)

No Montana judicial decision that we are aware of declares that the public uses described in § 70-30-102, MCA, must be strictly construed. In State ex rel. McLeod v. District Court (1923), 67 Mont. 164, 215 P. 240, we held that the power of a city to condemn land for a public highway outside of its city limits must have express authorization or be necessarily implied in the statutes. We have, however, held that vigorous compliance with procedures required for eminent domain is commanded. Helena v. Rogan (1902), 26 Mont. 452, 68 P. 798 (failure to describe property to be condemned); Glass v. Basin Mng. and Concentrating Co. (1899), 22 Mont. 151, 55 P. 1047 (no pre-action attempt at negotiation). If strict construction of public uses for which eminent domain may be had were required by the common law, where the law is declared by statute, common law may be

applied only if not in conflict with the statutes. Section 1-1-108, MCA. By law the statutes establish the law of this state respecting the subjects to which they relate and their provisions and all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice. Section 1-2-103, MCA. Statutes may not be interpreted to defeat their object or purpose, and the object sought to be achieved by the legislature is of prime consideration in interpreting them. Dover Ranch v. Yellowstone County (1980), 187 Mont. 276, 609 P.2d 711. No interpretation is required when the plain meaning can be derived from the words of the statute. Tongue River Electric Co-op, Inc. v. Montana Power Co. (1981), 195 Mont. 511, 636 P.2d 862.

The authority for condemnation in this case is clearly expressed in subsection 15 of section 70-30-102, MCA.

Montana Talc has argued before the District Court and now here that the construction of an open-pit for mining purposes is really the establishment of a road for access from the surface to the ore body. The purpose of the "backslope," Montana Talc contends, is simply to accomodate the necessary roads. Accordingly, Montana Talc contends that a further enumeration of public use is found in subdivision (5) of § 70-30-102, MCA, which provides for "roads . . . for working mines . . .." The District Court rejected this contention, saying that the roads for which condemnation is authorized under subsection (5) can only be those commonly referred to as surface roads, not "subsurface" roads located at elevations as much as 250 feet below the existing land surface.

Had we not already determined that the mining and extraction of ores owned by the plaintiff located beneath or upon the surface of property where the title of the surface

is vested in others is an enumerated public use under subsection (15), it had then been necessary for us to determine whether under subsection (5) the roads on an open-pit backslope are the roads contemplated for working mines as a public use. There is no need for us to now consider this contention in view of our determination under subsection (15). The effect of our Opinion here is to regard the whole of the open-pit operation, including its backsloping, as a mine. It should be remembered, however, that subsection (5) in its exact present language has been a part of the statutes of this state from the beginning of our statehood, and was, until 1961, the only provision of the eminent domain statutes pertaining to the mining industry. Yet, the courts regarded subsection (5) as granting a broad power to the mining industry, broad enough to prompt the late Chief Justice Brantly to comment in Kip v. Davis-Daly Copper Company (1910), 41 Mont. at 518-19, 110 P.2d at 241:

> Hence, from the beginning, it has been the policy of the state, indicated by its constitutional and statute law, as interpreted by this Court, to foster and encourage the development of the state's mineral resources in every reasonable way. It has favored the industry of mining in the matter of taxation of mining property (citing authority); and has included among the public uses for which private property may be taken by the exercise of the right of eminent domain, roads, tunnels, ditches, flumes, pipes and dumping places for working mines, mills, or smelters for the reduction of ores . . .

In 1961, the legislature broadened the eminent domain authority given to the mining industry by adding to the eminent domain statutes what is now the first sentence of

subsection (15). (Ch. 216, Laws of Montana (1961).) It is that broadened power that benefits Montana Talc today.[2]

What is the Effect in this Case of the Landowner Notification Act?

In 1961, the legislature adopted the Landowner Notification Act. Sections 82-2-301 through -306, inclusive, MCA.

As applied to this case, the Landowner Notification Act (LONA) requires prospective open-pit mine operators who do not own the surface of the land in fee not to disturb in any manner the surface until the owner of the surface is notified in writing, accompanied by maps and plans of work and operations. Section 82-2-303(1), MCA. Before the commencement of any open-pit mining operation, the mine operator must first obtain from the surface owner of private lands specific written approval of the proposed work or operations. Section 82-2-303(2).

Cyprus contended before the District Court and now here that because it will never give Montana Talc written approval for any surface disturbance on the subject property, Montana Talc's condemnation efforts must fail as a matter of law.

The District Court held that it must follow the plain language of § 82-2-303(2) even if it was in conflict with § 70-30-102, MCA; that because Montana Talc is not seeking a fee ownership of the surface of the subject property in the condemnation proceeding, but rather a right to jointly use the subject property with Cyprus, its ownership would not rise to the fee ownership required by subsection (2) or the

---

2    The legislature has, however, restricted the strip mining or open-pit mining of coal. Section 70-30-102(15), MCA; § 70-30-106, MCA.

- 12 -

surface ownership required by subsection (3) of § 82-2-303; and, that the only ownership which could exempt Montana Talc from the operation of LONA was the condemnation of a fee ownership in the subject property which Montana Talc does not seek.

Montana Talc contends that where two statutory provisions are in conflict, such as LONA and the eminent domain statute in this case, LONA, which provides for a consent from the surface landowner cannot impliedly repeal the eminent domain statutes which are directed to a non-consenting landowner.

Montana Talc relies on Wyomo Fuels, Inc. v. Edwards (Wyo. 1986), 723 P.2d 1230. Wyomo, however, was distinguished by the District Court because of different statutes and the nature of the interest there being sought, a right of way across the defendant's property. We agree that Wyomo is not quite on point for this case.

The District Court did indicate in a memorandum on this case that it thought LONA was unconstitutional but left that for this Supreme Court to decide. Montana Talc points to our decision in Western Energy v. Genie Land Company and Montana Department of State Lands (Mont. 1987), 737 P.2d 478, 44 St.Rep. 904, where this Court held that § 82-4-224, MCA, a similar statute requiring the consent of the surface owner for strip mining operations to commence, was unconstitutional. Section 82-4-224, MCA, applied only to the mining of coal and uranium. Section 82-4-203(20), MCA.

We hesitate to pass on the constitutionality of LONA where the District Court has not specifically ruled thereon. Instead we determine that there is a good force of reasoning why the provisions of LONA in this case must give way to the condemnation statutes. The reasons stem from the source of each act, and the purpose of enacting each act. LONA is

- 13 -

obviously calculated to require notice to the surface landowner of proposed strip or open-pit mining operations which would disturb the surface of his land. One of the purposes of the notice is so that the landowner may evaluate the extent of disturbance contemplated and the sufficiency of the restoration and rehabilitation measures planned. Section 82-2-303(1), MCA. The object of LONA is therefore not difficult to descry. Under LONA, the surface landowner is entitled to notice and full revelation. The surface landowner may withhold his consent to the strip mine operation unless or until the strip mine operator becomes the owner in fee simple of the subject property. The legislation is aimed at the protection of private persons.

Eminent domain, however, derives from the power of sovereignty. Eminent domain is the right of the state to take private property for public use. Section 70-30-101, MCA. It is a power constitutionally grounded. Art. II, § 29, 1972 Mont. Const. When a private person or a corporation exercises eminent domain for the purpose of taking private property for public use, that person or corporation does so through the power of the state for the perceived common good of the public as a whole. The due process rights of the party whose property is taken for public use are protected by the statutes providing the procedures for eminent domain and by the constitutional provision for just compensation.

It is inconceivable therefore that the legislature intended the provisions of LONA, enacted for the benefit of private persons, to overcome and supersede the provisions of the eminent domain statutes, enacted for the preservation and protection of the public good. Moreover, we do not favor the repeal of statutes by implication. State v. Gafford (1977), 172 Mont. 380, 388, 563 P.2d 1129, 1134.

We therefore hold in this case that the provisions of LONA do not affect adversely the right of Montana Talc to utilize eminent domain against a nonconsenting landowner in pursuance of its prospective mining operation.

The fact that § 70-30-104, MCA, permits persons seeking eminent domain to take such estate or rights as may be necessary up to and including a fee simple overcomes the District Court's apprehension respecting the nature of the interest sought by Montana Talc in this case.

Is the Proposed Public Use by Montana Talc More Necessary than that of Cyprus?

Section 70-30-111(3), MCA, provides that if the property proposed to be taken is already appropriated to some public use, the plaintiff must show by a preponderance of the evidence that the public use to which the property is to be applied is a more necessary public use.

Cyprus has obtained an operating mining permit on Section 4, which encompasses all of the subject property. The District Court held that as a matter of law, since an operating permit had been issued to Cyprus, Cyprus held the subject property as already committed to a public use, that is, mining. The District Court determined that Montana Talc desired to put the subject property to the same public use to which it had already been committed by Cyprus and that Montana Talc could not, as a matter of law, characterize its proposal as a "more necessary public use." Therefore, the District Court held that Montana Talc could not satisfy the provisions of § 70-30-111(3), MCA.

Without further findings, the issue cannot be easily decided. In Butte Anaconda and Pacific Railway Company, the plaintiff BA & P sought by eminent domain the right to utilize part of the right of way of the Montana Union Railway Company. The objection was made that since Montana Union

Railway Company had already put the property to public use, as a railroad, a like use by BA & P could not be considered "more necessary." This Court disagreed for cogent reasons:

> Now, however, having advanced to this point of the case, we are met with this argument by the appellant's counsel, namely, that this right of way was already appropriated, and that there was no delegation of power to any corporation under the eminent domain laws of the state to take property already appropriated to a public use unless, as provided by (citing a statute) "the public use to which it is to be applied is a more necessary public use." We have already concluded that this land was necessary to respondent's use, and the question therefore is, is respondent precluded from condemning these necessary lands because they have already been condemned for public use by the appellants? If the question were limited merely to this single inquiry (unless some other statute authorized a taking), doubtless, under rules of construction, we should hold that the respondent could not invade the right of way of the appellants. But our legislature has imposed upon the court the additional responsibility of judicially determining whether the use to which the appellants did or would put the particular lands is a more necessary one to the public than that to which they have already been appropriated by the Montana Union Railway . . .

> We have used the word "necessary" advisedly throughout this opinion, although when we say that the route chosen by the Butte, Anaconda & Pacific requires the taking of the lands in question as necessary for public use, we do not mean that there is an absolute necessity of a particular location they seek. But, under the statute, such an absolute necessity is not a prerequisite to the exercise of the law of eminent domain. (Emphasis in original.)

> . . .

> It was never contemplated by the constitution that competition between railroads should not be sanctioned. On the contrary, our construction of the law is that it is the policy of this state,

voiced in its constitution and statutes, to build up competing roads, rather than to deter them. If this were not so, why did the legislature expressly include the right to take lands already appropriated by one corporation and devote them to public use where the latter use was a more beneficial use than the former? The mere fact that the easement is held by a corporation, and that another corporation takes it to subserve public use, cannot affect the principle so long as a second taking is for the greater public good (citing authority). Nor can the claim of a superior equity of respondent be urged as a sound argument, based upon the fact that the appellants already have appropriated the property for public use. (Citing a case.)

. . .

We cannot agree that the statute which authorizes lands to be appropriated for a more necessary public use means a different public use in all cases. If the legislature had intended that construction to be put upon the statute, instead of carefully restricting the right to a more necessary public use, they could easily have said a different public use.. . .

16 Mont. at 537, 538, 543, 546, 41 P.2d at 243, 244, 245, 247-48.

The property owned by Montana Union Railway was not actually being used by Montana Union at the time that BA & P sought eminent domain of the property for similar use. That appears to be the case here with respect to Cyprus' use of this specific property which Montana Talc seeks to condemn. It is necessary, therefore, that this case be remanded for the purpose of a determination by the District Court of a consideration of all factors involving the public use of the subject property by Cyprus, and as proposed by Montana Talc. Included, but not limited to those factors, are the reasonableness of the proposed use by Montana Talc, the present and actual use by Cyprus and the reasonableness of

its proposed use, the possibility of joint operation to safeguard the rights of each party, the public good to be accommodated by the public uses so proposed and all other factors which may reasonably lead to a determination whether the proposed use by Montana Talc is within the contemplation of § 70-30-111, MCA, as interpreted by the courts.

In Cocanougher v. Zeigler (1941), 112 Mont. 76, 83-84, 112 P.2d 1058, 1061, we find an extensive discussion of the provision in § 70-30-111(3) for a "more necessary" public use. The proposed use must be "more necessary" where the effect of granting the succeeding public use condemnation will deprive the first owner of his use altogether. If the first owner will be completely deprived of his public use of appropriated property, such that his use will be defeated or seriously interfered with by the proposed condemnor's right if granted, the statute requiring a "more necessary" public use comes into play. The requirement of a more necessary public use "does not preclude condemnation for a joint use which will not interfere with the use thereof by the owner." Cocanougher, 112 P.2d at 1061.

Accordingly, the summary judgment entered by the District Court is reversed and this cause is remanded to the District Court for further proceedings in accordance with this Opinion.

_John C. Sheehy_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

- 18 -

_____

William E Smith

_____

L C _____

/

_____
                    Justices

Justice R.C. McDonough dissents.

The order of the District Court granting the motion for summary judgment of the respondent should be affirmed.

A grant by a sovereign government of the power of eminent domain to a private person to take another person's property without the owner's consent should be given very careful scrutiny.

Historically, statutes in derogation of the common law and common or natural rights have been strictly construed. However, in Montana by § 1-2-103, MCA, statutes in derogation of the common law are to be liberally construed. Nevertheless, § 1-2-103, MCA, does not apply here because § 1-2-104, MCA, preserves the historical rule that statutes in derogation of common or natural <u>rights</u> are to be strictly construed. Section 1-2-104, MCA, reads as follows:

> <u>Preference to construction favoring natural right.</u> When a statute is equally susceptible of two interpretations, one in favor of natural right and the other against it, the former is to be adopted.

See also 73 Am. Jur. 2d <u>Statutes</u> § 284 (1970). Private and individual ownership of property is a natural and fundamental right. Section 3 of Article II of the Montana Constitution, 1972, provides:

> All persons are born free and have certain inalienable rights. They include the right to a clean and healthful environment and the rights of pursuing life's basic necessities, enjoying and defending their lives and liberties, <u>acquiring, possessing</u> and <u>protecting property</u>, and seeking their safety, health and happiness in all lawful ways. In enjoying these rights, all persons recognize corresponding responsibilities. (Emphasis added.)

20

See also 82 C.J.S. Statutes § 393, page 93 (1953); 73 Am. Jur. 2d Statutes § 285 (1970). Thus, the majority mistakenly abrogates the law of strict construction in interpreting our eminent domain statutes.

It has long been the law in Montana that statutes granting the power of eminent domain must be strictly construed. This Court in State v. Aitchison (1934), 96 Mont. 335, 30 P.2d 805, interpreting substantially the same statute we interpret today, stated as follows:

> This court in the case of State ex rel. McLeod v. District Court, supra, quoted with approval from Lewis on Eminent Domain (3d Ed.) § 371, as follows: 'The authority to condemn must be expressly given or necessarily implied. The exercise of the power being against common right, it cannot be implied or inferred from vague or doubtful language, but must be given in express terms or by necessary implication. When the right to exercise the power can only be made out by argument and inference, it does not exist.' All of our decisions have been in accord with the foregoing quotation. State ex rel. McMaster v. District Court, 80 Mont. 228, 260 P. 134; Helena Power Transmission Co. v. Spratt, 35 Mont. 108, 88 P. 773, 8 L. R. A. (N. S.) 567, 10 Ann. Cas. 1055.

Aitchison, 30 P.2d at 807.

Again in State ex rel. McMasters v. District Court (1927), 80 Mont. 228, 231, 260 P. 134, 135, this Court stated:

> The right to take private property from its owner against his will can only be invoked pursuant to law, and there must always be a rigorous compliance with its provisions when this right is sought to be exercised (Glass v. Basin Mining and Concentrating Co., 22 Mont. 151, 55 P. 1045; City of Helena v. Rogan, 26 Mont. 452, 68 P. 798), and authority for the exercise of such right must be clearly expressed in the law before it will be allowed (State ex rel McLeod v. District Court,

21

supra; 1 Elliot on Roads and Streets, 4th ed., §
218, p. 263.)

And in 3 Sutherland Statutory Construction § 64.06 (4th ed.
1986), it is stated:

> The power to condemn property for public use
> upon just compensation is an inherent attribute of
> sovereignty. Grants of the power of eminent domain
> must be found expressly or by necessary implication
> in legislation, and the policy has become well
> established that such grants are to be strictly
> interpreted against the condemning party and in
> favor of the owners of property sought to be
> condemned.

Simply put, words granting power to take another man's
property without his consent must be given their plain
meaning, and be strictly construed.

The applicable statute is § 70-30-102, MCA, and the
pertinent parts are as follows:

> Subject to the provisions of this chapter, the
> right of eminent domain may be exercised in behalf
> of the following public uses:
>
> . . .
>
> (5) roads, tunnels, ditches, flumes, pipes,
> and dumping places for working mines, mills or
> smelters for the reduction of ores.
>
> . . .
>
> (15) to mine and extract ores, metals, or
> minerals owned by the plaintiff located beneath or
> upon the surface of property where the title to
> said surface vests in others.
>
> . . .

In this case, appellant attempts to condemn for an open pit
mine and the backsloping thereof. Appellant stated in answer

to an interrogatory that the use to which they will put the subject property is

> required in order to remove overburden from the Section 9 ore deposit; such removal must be made to permit side slopes at acceptable and safe angles. Roads are necessary on the [Subject Property] in order to have access to and remove overburden, and to remove ore. Such roads or ramps will continue to be necessary for access to the mine and the ore. An additional 100 foot boundary is necessary around the edge of the pit in order to monitor stability, provide survey control, provide a safety buffer, and to permit the diversion away from the open pit as tributary water.

It is clear that the right to condemn for an open pit mine and backsloping is not covered by the above subsection (5) under the rule of an express grant and those necessarily implied therefrom. One cannot say because the roads for a mine are a public use that this ancillary use to the main destruction of a surface by an open pit mine permits as a public use the open pit mine and the backslopes thereof. This is like the tail wagging the dog. Roads are part of the backslope but the backslope is not part of the road in this instance.

As to subsection (15), it plainly limits the right to condemn the surface of property to that particular surface beneath or upon which the proposed condemnor owns the minerals. Under subsection (15), the right of eminent domain may be exercised as follows: (1) to mine and extract ores, metals, or minerals owned by the plaintiff; (2) which ores, metals, or minerals are located beneath or upon the surface of property; (3) which title to said surface (i.e. overlying the ores, metals or minerals owned by the plaintiff) vests in others. The statute plainly requires the existence of these three conditions. The majority opinion takes the word

23

beneath and runs with it in all directions but up. It says in essence that instead of being limited to ores, metals or minerals located beneath the surface of the property where the title to such surface is owned by others; that "beneath" means if the elevation of the ore body owned by the condemnor is lower or closer to the center of the earth than the surface owned by others, then the surface owned by others can be condemned. Under this interpretation, the ore body could be a mile or more away in any horizontal direction. This expansion of the meaning of the word "beneath" is not in the plain language of the statute and is not strict construction. Even if one assumes that the word beneath is capable of two meanings, as applied here under the rules of strict construction, the more restricted meaning is to be applied. Section 1-2-104, MCA.

In essence what the majority has done is to expand the meaning of subsection (15) to put a comma after the words "upon the surface of property," and add the words "and especially," making the balance of the sentence expansive even though it is qualifying as originally written. This interpretation also eliminates the need for the specific purposes incident to working mines allowed by subsection 5 of the applicable statute quoted above.

To further support its opinion the majority quotes general statements of the intention of the legislature to encourage the development of the mining industry and that expansion and not restriction appears to be the legislative watchword. Such statements have no meaning here because the words fly in the face of the rules of statutory construction of eminent domain. Statutes, constitutions, and opinions are replete with general policy statements favoring a variety of man's endeavors, for example agriculture, environment and

24

conservation, and these statements can also be used to support opposing positions.

The effect of this opinion is to give the owner of minerals lying at an elevation lower than lands owned by others the right to condemn such others' land for open pit mining (excepting the strip mining of coal), even though the owner of the condemned property owns all the incidents of ownership thereof including the minerals and even though he is using that land for agricultural, commercial or residential purposes. To say it another way, the majority opinion gives the power to condemn private land for an open pit mine, (or for any other mining purpose) to a private corporation that owns no interest in the property sought to be condemned. If the legislature wanted to do this it could have said so in plain language. The responsibility of this Court is not to insert what has been ommitted or omit what has been inserted. Section 1-2-101, MCA.

_____
Justice

25