No. 14850

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

ROBERT E. McTAGGART,

Petitioner and Respondent,

vs.

THE MONTANA POWER COMPANY,

Respondent and Appellant.

_____

Appeal from:  District Court of the First Judicial District,
              Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellant:

        Corette, Smith, Dean, Pohlman and Allen, Butte, Montana
        Kendrick Smith argued, Butte, Montana

    For Respondent:

        Herron and Meloy, Helena, Montana
        Peter M. Meloy argued, Helena, Montana

                              _____

                              Submitted:  November 1, 1979

                                Decided:  NOV 2 1979

Filed:

_____
        Thomas J. Kearney
                          Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an action for the relocation of an overhead utility line pursuant to sections 69-4-401 through 69-4-404, MCA, in the District Court of the First Judicial District, in and for the County of Lewis and Clark, the Honorable Nat Allen presiding.

Respondent is the owner of certain real agricultural property in Lewis and Clark County. Appellant, the Montana Power Company, is the owner of an overhead utility line which crosses respondent's property. Respondent filed a petition for the relocation of the utility line pursuant to sections 69-4-401 through 69-4-404, MCA, alleging that he desired to install a "center pivot irrigation system" on his property which would increase the productivity of the land from one-half ton of alfalfa per acre to five tons per acre. Respondent offered a feasible alternative route for the relocation of the line giving appellant a right-of-way to continue its operation of the line and allowing respondent to install the new irrigation system.

A motion to dismiss was filed by appellant. Briefs were submitted on the motion by both parties, and the motion was overruled. The motion to dismiss presented alternative contentions that the applicable statutes were unconstitutional because they allowed a taking of private property for private use, or, if the taking was for a public use, the statutes were unconstitutional because there was no just compensation.

Respondent filed a motion for summary judgment, which was granted by the District Court. The court found that there would be a substantial improvement in agricultural

productivity by installing the irrigation system and that the alternative route offered by respondent for the relocation of the power line was feasible. The court further found that sections 69-4-401 through 69-4-404, MCA, were constitutional and ordered appellant to relocate the utility line. The costs of relocation were divided equally between the parties. Appellant appeals from the summary judgment and order.

The issues raised on appeal solely concern the constitutionality of the applicable statutes. In particular, two issues are raised:

(1) Whether sections 69-4-401 through 69-4-404, MCA, inclusive, violate the Fourteenth Amendment to the United States Constitution and Article II, Section 29, of the 1972 Montana Constitution, in that they allow the taking of private property for the private use of another?

(2) Whether the use sought by respondent is a public use, and if so, whether sections 69-4-401 through 69-4-404, MCA, inclusive, are a violation of the Fourteenth Amendment to the United States Constitution and Article II, Section 29, of the 1972 Montana Constitution, because they allow the taking of private property for public use without just compensation?

The statutes applicable in this case are set forth in sections 69-4-401 through 69-4-404 of the Montana Code Annotated. Specifically, they provide:

> "69-4-401. Definitions. As used in this part, the following definitions apply: (1) 'Agricultural improvement' includes, without limitation, sprinkler irrigation systems. (2) 'Overhead utility line' means a facility for the transmission or distribution of electricity or telephone messages along wires or cables suspended above the ground between single or double poles and their respective anchors.

"69-4-402.  Petition for relocation of overhead
line.  An owner of agricultural land across
which an overhead utility line has been con-
structed may petition the district court for an
order for relocation of the line for the purpose
of installing an agricultural improvement.  The
petition shall set forth the nature of the pro-
posed agricultural improvement, the increase in
productivity of the land anticipated to result
from the improvement, and a feasible alternative
route, across other land to be provided by the
petitioner at no cost to the owner of the over-
head utility line.

"69-4-403.  Hearing and order.  The district
court shall, upon notice to the owner of the
overhead utility line, hear evidence bearing
upon the matters presented in the petition.  If
the evidence establishes a substantial improve-
ment in agricultural productivity and the fea-
sibility of the relocated route, the court
shall grant or modify and grant, as modified,
the petition and order the owner of the line
to relocate the line.

"69-4-404.  Costs of relocation.  The costs of
relocating an overhead utility line as ordered
under 69-4-403 shall be paid 50% by the utility
and 50% by the owner of the land.  However, if
the person petitioning for the order fails for
any reason to install the agricultural improve-
ment within 2 years following the date relocation
is completed, he must reimburse the owner of the
line the full cost of relocation, and the court
has continuing jurisdiction over the parties
for the purpose of ordering such reimbursement."

Our first consideration is the character of the above-
quoted statutes.  On one hand, respondent urges that the
statutes are an exercise of the police power of this state
over public utilities and that property may therefore be
taken without just compensation.  On the other hand, appel-
lant characterizes the statutes as involving the right of
eminent domain, which authorizes the state to take private
property for public use with just compensation.

We find that the statutes sound in eminent domain.
Where the exercise of the police power of the state is
directly connected with matters of public health, safety and
welfare, we find that those matters are only indirectly

-4-

concerned, if at all, with the matters raised by the statutes here.  More importantly, we note that the statutes provide for a "taking" of property without the consent of a utility. They involuntarily require a public utility to move its power lines and pay half of the costs of relocation when an owner of farmland makes the necessary showings in District Court.  That being the case, eminent domain, the right of the state to take private property for public use, and the principles of eminent domain are applicable here.

The first issue concerns whether the taking is for a public or private use.  It is fundamental to the law of eminent domain that private property may not be taken without an owner's consent for the private use of another. Spratt v. Helena Power Transmission Company (1908), 37 Mont. 60, 94 P. 631; section 70-30-101, MCA.  Both the United States and Montana Constitutions prohibit a taking by the state for merely private use.  U.S. Const., Amend. XIV; 1972 Mont. Const., Art. II, §17.  Rather, for the right of eminent domain to lie, the use must be one which is public.

The Montana legislature has by statute declared several uses to be public in connection with the right of eminent domain.  Section 70-30-102, MCA.  Among the uses enumerated are:

> ". . . the right of eminent domain may be
> exercised in behalf of the following public
> uses:
>
> ". . .
>
> "(2) . . . all other public uses authorized
> by the legislature of this state;
>
> ". . .
>
> "(4) . . . canals, ditches, flumes, aqueducts,
> and pipes for public transportation, supply-
> ing . . . farming neighborhoods with water
> . . ."

Here, one of the uses for which eminent domain is sought is the more efficient use of water in the irrigation of farmland. Respondent desires to install a center pivot sprinkling system, recognized as a much more efficient method of irrigation than methods such as flooding. Appellant, while acknowledging the desirability of such a system, argues that such a use has never been specifically declared to be public by the legislature. Where supplying a farming neighborhood with water is a public use, appellant maintains that the means of using water once it has been supplied has not been recognized as a public use.

We disagree. First, we note several important provisions which relate to the use of water within this state. Perhaps the most important of these is a constitutional provision in which the people have declared that the use of all water within this state shall be deemed to be a public use. Article IX, Section 3(1), of the 1972 Montana Constitution, provides:

> "The use of all water that is now or may here-
> after be appropriate for sale, rent, distribu-
> tion, or other beneficial use, the right of way
> over the lands of others for all ditches, drains,
> flumes, canals, and aqueducts necessarily used
> in connection therewith and the sites for reser-
> voirs necessary for collecting or storing water
> shall be held to be a public use."

Next, we note the position of the Montana legislature with respect to water. Section 85-2-101, MCA, of the 1973 Montana Water Use Act, provides:

> "Pursuant to Article IX of the Montana Constitu-
> tion, the legislature declares that any use of
> water is a public use and that the waters within
> the state are the property of the state and for
> the use of its people. . ."

Section 85-2-101, MCA, also enunciates the policy of this state concerning water:

> "It is the policy of this state . . . to encourage the wise use of the state's water resources by making them available for appropriation consistent with this chapter and to provide for the wise utilization, development and conservation of the waters of the state for the maximum benefits of its people with the least possible degradation of the natural aquatic ecosystems. In pursuit of this policy, the state encourages the development of facilities which store and conserve waters for beneficial use, for the maximization of the use of those waters in Montana, for the stabilization of stream flows, and for groundwater recharge."

From these provisions, we believe that a more efficient use of water in the irrigation of farmland is indeed a public use for which the right of eminent domain will lie. While this use may not readily conform to the traditional concept of "public use," we note that term is elastic and keeps pace with changing conditions. 26 Am.Jur.2d Eminent Domain §27, pp. 671-672. Although it is true that there may be a private benefit to respondent here in that the productivity of his land will be increased, it is also true that there will be a benefit to the public.

We feel compelled to observe the high priorities that have been put on the use of water by the people of this state. Water must be conserved and put to the maximum benefit of all those who use it. The mere fact that one may realize private profit in property sought to be condemned does not prevent the use from being declared public. Spratt v. Helena Power Transmission Co. (1908), 37 Mont. 60, 77, 94 P. 631. Nor is the mere number of people who actually make use of the public use determinative of its character. This is especially true in the case of a recyclable resource. A use may be public even though it may be enjoyed at certain times by a comparatively small number of people. 26 Am.Jur.2d Eminent Domain §32, p. 681. We find, therefore, that a more

efficient use of water in the irrigation of farmland is a public use for which the right of eminent domain will lie.

We note additionally that these statutes do not violate the rule that where property has already been taken for a public use, it may not be condemned again except for a more necessary public use. Cocoanougher v. Ziegler (1941), 112 Mont. 76, 81-82, 112 P.2d 1058, 1060; section 70-30-103,(c), MCA. Here, the statutes provide that the owner of land offer a feasible alternative route upon which the utility may plot its power line. Because the property is substituted, it cannot be said to have been "doubly condemned." We have previously upheld substitute condemnation as a valid exercise of the power of eminent domain. See, State ex rel. De Puy v. District Court (1963), 142 Mont. 328, 384 P.2d 501, 20 A.L.R.3d 862, 868. Our decision today in no way involves a determination of whether the transportation of electricity or the efficient use of water has the higher priority in terms of public use.

The second issue in this case involves whether there is just compensation. Section 69-4-404, MCA, provides that the costs of relocation shall be divided equally between the landowner and the owner of the power line. Appellant argues that the statute does not provide for just compensation. Appellant maintains that the principle of just compensation requires that the owner of condemned property be made whole for all of the damages sustained and that there must be full compensation. Appellant contends that 50 percent compensation is only half of the compensation properly due appellant.

With this proposition we fully agree.

Article II, Section 29, of the 1972 Montana Constitution, states:

"Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into the court for the owner." (Emphasis added.)

This Court has also held in several cases that a landowner in a condemnation action should be fairly and fully compensated, State v. Peterson (1958), 134 Mont. 52, 57, 328 P.2d 617, 620, and that just compensation is determined by equitable principles, Alexander v. State Highway Commission (1966), 147 Mont. 367, 371-72, 412 P.2d 414, 416. In Alexander we stated:

"Just compensation is determined by equitable principles. Its measure varies with the facts. Where the circumstances will not permit, the value of property cannot be measured solely by formula or artificial rule . . ."

Here, there is just compensation in one sense; the utility is compensated for the easement which it already has. The statutes require that the landowner offer land upon which the utility may plot an alternative route for its power line. It is nonetheless a fact, however, that the utility must also bear half the cost of relocation. Where the land is condemned and the utility has paid for the easement once, we think it unfair that it be required to pay for the easement again. The relocation of the power line comes at the insistence of the landowner, and it is he who should properly bear the costs of relocation. We find therefore that section 69-4-404, MCA, does not provide for just compensation, and we declare it unconstitutional.

Accordingly, we affirm in part and reverse in part the judgment of the District Court and order that respondent pay the entire cost of relocating the overhead utility line.

John Conway Harrison
Justice

We concur:

_____
          Chief Justice

_____

_____

_____
            Justices