No. 84-144

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

LINCOLN/LEWIS & CLARK COUNTY SEWER
DISTRICT AT LINCOLN,

        Plaintiff and Appellant,

-vs-

ROBERT F. BOSSING, JEAN G. BOSSING,
et al.,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable ~~Gordon Bennett~~, Judge presiding.
H. William Coder

COUNSEL OF RECORD:

    For Appellant:

        Jackson, Murdo & Grant; Robert M. Murdo, Helena,
        Montana

    For Respondents:

        J. C. Weingartner, Helena, Montana
        Douglas Allen, Great Falls, Montana
        Michael J. Rieley, Helena, Montana
        Paul Keller, Helena, Montana
        Chadwick Smith, Helena, Montana

---

Submitted on Briefs:  Nov. 29, 1984

Decided:  March 14, 1985

Filed:  MAR 14 1985

_Ethel M. Harrison_
_____
           Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The plaintiff, Lincoln/Lewis & Clark County Sewer District, appeals the judgment of the District Court of the First Judicial District, Lewis & Clark County, finding that plaintiff was not entitled to a preliminary condemnation order for utility easements in defendants' properties. We affirm.

The plaintiff and appellant, Lincoln/Lewis & Clark County Sewer District (hereinafter "District") was incorporated in 1980 following a vote in which approximately seventy percent of those voting approved the formation of the District. The District was formed for the purpose of designing, constructing and maintaining a new central sewer system for the unincorporated town of Lincoln, Montana. Title 7, Chapter 13, parts 22 and 23, MCA, governs the District.

The District instituted this action to acquire easements in defendants' properties in order to construct and maintain septic tanks and service lines running from the tanks to collection mains which have already been installed. Easements from over 220 of the landowners have been acquired through negotiations and agreements. This eminent domain action involves approximately twenty-five parcels of property within the District whose owners have refused to grant easements.

Two prior actions have been maintained regarding this District. In Lewis & Clark County cause No. 48930, District Judge Gordon Bennett decided in favor of the District on the validity of the creation and the existence of the District. In Lewis & Clark County cause No. 49137, District Judge Henry Loble determined that the project was in the public interest,

that there was a public need and necessity for land for the purpose of constructing, laying and maintaining the collection lines, and that the District Court was entitled to a preliminary condemnation order. No appeal was taken by any defendants in either action.

The current sewage disposal needs of the community are met by the use of individually owned and constructed drainage systems. The most common type is a septic tank in which solid wastes are separated from liquid wastes with the solid wastes remaining in the tank. The liquid wastes are then piped into underground drainfields and treated by a "leaching" process where they pass through the soil surrounding the drain field. The solid wastes remain in the tank and must be removed from time to time depending on the amount of use the system receives.

County health regulations require at least four feet of unsaturated soil below the drainfield for the sewage to receive the necessary treatment before reaching the groundwater. The drainfield is usually one to three feet below the surface. These regulations are based on generally recognized nation-wide standards designed to prevent outbreaks of disease and protect groundwater quality. The groundwater elevation in Lincoln generally ranges from two to six feet or possibly more, depending on the time of year a measurement is made. The average is about four feet from the surface. The evidence presented at trial did not show that the defendants' septic systems were defective or that they caused any groundwater contamination, seepage or other present problems. There was no evidence of any foreseeable risk of contamination posed by the defendants' systems.

The issues presented for review are:

(1) What is the scope of authority of a trial court's review in a condemnation action and did the trial court exceed that authority?

(2) What is the burden of proof in a condemnation action and who carries that burden?

(3) Was there necessity for utility easements in defendants' properties under these circumstances?

Courts generally do not have the power to determine what public improvements shall be constructed, where they shall be located, and when the power of eminent domain shall be exercised. These are exclusively within the power of the legislature. Nichols on Eminent Domain, §4.11(1). Courts are also without power to interfere with a board's discretionary action when exercising eminent domain power on the sole basis that the action shows poor judgment or a lack of wisdom. State Highway Commission v. Crossen-Nissen Co. (1965), 145 Mont. 251, 254, 400 P.2d 283, 285, citing State ex. rel. State Highway Comm'n. v. District Court (1938), 107 Mont. 126, 130, 81 P.2d 347, 349.

Where there is an abuse of discretion, or arbitrary, capricious, fraudulent or bad faith action in the exercise of eminent domain power, however, there is a call for the protection of the courts. Nichols on Eminent Domain, §4.11(2) and Crossen-Nissen, 400 P.2d at 285. In Montana the legislature has also established a court's power in a preliminary condemnation action in section 70-30-206, MCA, to include determining whether the use for which the property is sought is a public use, determining whether the public interests require the taking and determining that the use is authorized by law and the taking is necessary to such use

pursuant to section 70-30-111, MCA. This Court has interpreted those statutes as requiring a district court to find "the proposed taking is necessary to the public use under the circumstances of the individual case" before ordering condemnation. Montana Power Company v. Bokma (1969), 153 Mont. 390, 397, 457 P.2d 769, 774.

Prior cases, along with the statutes mentioned, clearly reflect that the trial judge has the power to determine necessity and make findings on whether the public interest requires the taking in an eminent domain proceeding. State Highway Commission v. Yost Farm Company (1963), 142 Mont. 239, 244, 384 P.2d 277, 279. Thus, to the extent the trial judge's findings go to a determination of the necessity of a taking of defendants' property, those findings are within the trial court's scope of authority and can be affirmed.

The trial court made two findings that are outside its scope of authority. Those findings are that "[t]here is no showing of need for a $2.6 Million Dollar sewer system in Lincoln" and "[t]hat the public interest does not require an elaborate sewer system as proposed." The two prior District Court actions had already made these determinations. In addition, the issues before this Court involved only the necessity of taking the particular property of these few defendants for septic tanks and connecting lines. Since these two findings exceeded the trial court's authority they are set aside.

The burden of proof in a condemnation action "rests upon the shoulders of one seeking to show that the taking has been excessive or arbitrary." Crossen-Nissen, 400 P.2d at 285, citing Nichols on Eminent Domain, §4.11(2). Where the issue is location of the use the choice of the condemnor is

5

given great weight and will not be overturned except on clear and convincing proof that the decision was excessive or arbitrary. Bokma, 457 P.2d at 775 and Schara v. Anaconda Co. (1980), 187 Mont. 377, 386, 610 P.2d 132, 137, cert. denied, 449 U.S. 920.

The condemnor, however, must initially produce sufficient evidence to establish facts indicating the taking is necessary. This is illustrated in Yost, 384 P.2d 277, where the Highway Commission merely alleged that the taking was necessary to public use in its prayer for relief and produced no evidence whatsoever at the hearing to establish necessity. This Court sustained a finding of no necessity under the statutes since the only evidence produced at trial was to the effect that no necessity for taking existed and that the road construction was not in the public interest. Yost, 384 P.2d at 282. Another illustration comes in City of Helena v. DeWolf (1973), 162 Mont. 57, 508 P.2d 122, where the condemnor, the City of Helena, introduced evidence to support the taking of the defendants' property. However, the evidence was not sufficient to support the district court's finding of necessity because it did not show that the city had a reasonably foreseeable ability to complete the project for which the property was intended. DeWolf summarized who carries the burden in an eminent domain proceeding by stating that: "[t]he burden of demonstrating necessity rests upon the condemnor who must establish a prima facie case to justify the taking. . . " 508 P.2d at 129.

Although at first glance these cases appear inconsistent with the cases cited above, they are reconcilable. DeWolf and Yost are both concerned with the condemnor's production of evidence at the outset of a proceeding. Once

6

sufficient evidence to establish necessity has been introduced, the burden shifts to the one who opposes the taking to show by clear and convincing proof that the condemnor's action was excessive or arbitrary. For example, where the location of an improvement is chosen based on the expertise and detailed consideration of the condemnor and the evidence is introduced at the hearing, the choice may be overturned if the opposing party shows the condemnor failed to consider least private injury between routes equal in terms of public good. Bokma, 457 P.2d at 775, citing State Highway Comm. v. Danielsen, (1965) 146 Mont. 539, 409 P.2d 443.

In the present case, the trial court found that the District, the condemnor, had not shown necessity for the taking of defendants' properties because they failed to demonstrate a reasonable present need or even need in the reasonably foreseeable future to connect defendants to the sewer. This is similar to DeWolf, in that the condemnor has not carried the burden of introducing sufficient evidence of necessity. The second part of the inquiry, whether the defendant can show the taking, even though necessary, is arbitrary or excessive, is not reached in the case at bar.

> "The requirement that the condemnor must show necessity for the property taken does not mean that it must be indispensable to the proposed project. Rather the word 'necessary'. . . means that the particular property taken be reasonably requisite and proper for the accomplishment of the purpose for which it is sought under the peculiar circumstances of each case." Crossen-Nissen, 400 P.2d at 284.

See also DeWolf, 508 P.2d at 129; Bokma, 457 P.2d at 774; and others. Here the trial court found that defendants' properties were not necessary to accomplish the purpose of

7

protecting the groundwater from contamination. Their properties would be "reasonably requisite and proper for the accomplishment of the purpose" only at the time the likelihood of pollution from their septic systems is present or reasonably foreseeable. This is similar to the situation that confronted the Court in DeWolf, in that the properties at issue will be required (i.e. necessity can be shown) only on the happening of a possible and unpredictable future event. This contingency is not sufficient to establish a reasonable present or reasonably foreseeable future need as correctly noted in the findings of the trial court.

We therefore affirm the order of the trial court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices