No.   93-398

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

CITY OF BOZEMAN, MONTANA, a Municipal
corporation, acting on behalf of the
DEPARTMENT OF TRANSPORTATION OF THE
STATE OF MONTANA,

      Plaintiffs and Respondents,

v.

DONALD D. VANIMAN and CECILIA R.
VANIMAN, Co-Trustees of Steelhead
Ranches, a Trust,

      Defendants and Appellants.


APPEAL FROM:   District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Michael G. Garrity, Kirwan & Barrett, P.C., Bozeman,
          Montana

      For Respondent:

          Peter S. Lineberger, Lineberger, Walsh & McKenna,
          P.C., Bozeman, Montana

FILED

MAR 1 - 1994

Filed:

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs:   December 2, 1993

Decided:   March 1, 1994

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendants Donald D. and Cecilia R. Vaniman appeal from an order of the Eighteenth Judicial District Court, Gallatin County, which issued preliminary condemnation against the Vanimans' property. We reverse and remand.

We rephrase the issue on appeal as follows: Whether the District Court erred by issuing the preliminary condemnation order condemning appellants' property for construction, reconstruction, maintenance and operation of an off-ramp to the eastbound lane of Interstate 90, a controlled-access highway, and for an adjoining rest area and visitor center facility on the property line southwest of the off-ramp, after concluding that the City of Bozeman Chamber of Commerce's intended use and operation of the proposed rest area and visitor center as a corporate headquarters was not specifically before the court at the preliminary condemnation hearing.

Pursuant to contractual agreement, the City of Bozeman (City) is assisting the State of Montana, Department of Transportation (State), in this action (the City and State are hereinafter occasionally referred to as the respondents). The respondents sought condemnation of the Vanimans' 8.712 acre parcel of property to build a rest area and visitor center located along Interstate 90 near Bozeman, Montana. They chose the Vanimans' property after considering, among other things, traffic and safety matters; the

site will rest in the middle of the longest stretch of interstate highway in Montana which currently does not have a rest area.

The project is known to the respondents as the North 19th Avenue Interchange project. It is a demonstration project, where federal, state and city funds have been commingled to fund construction. The total cost of the project is estimated at $14,000,000.

The City conferred with the City of Bozeman Chamber of Commerce (Chamber), an incorporated entity which serves the interests of Bozeman area businesses, about the possibility of the Chamber relocating its corporate headquarters at the proposed rest area and visitor center. According to records and testimony concerning their discussions, the Chamber would pay approximately $200,000 for the construction of its allocated corporate office space at the visitor center, staff the center and maintain the rest area grounds. Approximately 2,000 square feet of the 7,080 total square feet in the visitor center would be used to house Chamber corporate offices.

The City and the Chamber have not reduced any of their negotiations to a formal contract. State and federal authorities, however, have informed the City that federal funds are not available to fund the construction of any proposed Chamber offices.

To further the construction process, respondents submitted a written offer to purchase the Vanimans' property, which the Vanimans rejected. The State thereafter adopted a condemnation

3

order against the Vanimans' property on March 24, 1993. At a preliminary condemnation hearing, the District Court confirmed the State's condemnation. The Vanimans appeal.

Did the District Court err by issuing the preliminary condemnation order condemning appellants' property for construction, reconstruction, maintenance and operation of an off-ramp to the eastbound lane of Interstate 90, a controlled-access highway, and for an adjoining rest area and visitor center facility on the property line southwest of the off-ramp, after concluding that the City of Bozeman Chamber of Commerce's intended use and operation of the proposed rest area and visitor center as a corporate headquarters was not specifically before the court at the preliminary condemnation hearing?

The legislature's grant of the eminent domain power to governmental bodies must be strictly construed. State v. Aitchison (1934), 96 Mont. 335, 30 P.2d 805. Private real property ownership is a fundamental right, Art. II, § 3, Mont.Const, and any statute which allows the government to take a person's property must be given its plain interpretation, favoring the person's fundamental rights. See § 1-2-101, MCA; see also § 1-2-104, MCA.

Eminent domain is the State's right to take private property for public use. Section 70-30-101, MCA; Art. II, § 29, Mont.Const. The due process rights of the party whose property is taken for public use are protected by statutes providing the procedures for

4

eminent domain and by the constitutional provision for just compensation. Montana Talc Co. v. Cyprus Mines Corp. (1987), 229 Mont. 491, 748 P.2d 444.

The condemnor must initially establish facts indicating that the taking is necessary. Once sufficient evidence has been established, the person seeking to show that the taking is excessive or arbitrary has the burden of proof in a condemnation action appeal. Lincoln/Lewis & Clark County Sewer Dist. v. Bossing (1985), 215 Mont. 235, 696 P.2d 989. The court may be called upon to decide whether the condemnation taking is for public use, whether public interests require the taking, and whether the use is necessary and authorized by law. See § 70-30-111, MCA; Bossing, 696 P.2d at 991; see also Montana Power Company v. Bokma (1969), 153 Mont. 390, 397, 457 P.2d 769, 774.

During the trial court's review, it must make findings regarding the necessity of the taking. See Bossing, 696 P.2d at 991. Generally, where the legislature has granted the government the power of determining the necessity to exercise eminent domain, the government's finding of necessity is a political decision which will not be overturned by the court absent proof of arbitrariness by clear and convincing evidence. Montana Power Company v. Fondren (1987), 226 Mont. 500, 737 P.2d 1138.

On appeal before this Court, the District Court's findings of fact are subject to the clearly erroneous standard of review. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803

P.2d 601, 603. This Court has specifically adopted a three-part test to determine whether findings are clearly erroneous: first, the Court determines whether the findings are supported by the record; second, the Court determines whether the trial court has misapprehended the effect of the evidence; and third, if the finding in question is supported by the record, the Court considers whether a mistake has been made. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285. Additionally, we review the court's conclusions of law to determine whether the conclusions are correct. Steer, Inc., 601 P.2d at 603.

The rest area and visitor center use of the Vanimans' property is authorized by law as a public use. See §§ 60-1-102, 60-3-101, 60-4-103(4), 70-30-102(1) and (2), 70-30-110 and 70-30-111, MCA; 23 CFR Ch.I, §§ 752.7, 752.8, 752.11. Indeed, the record discloses that Cecilia Vaniman acknowledged the State's authority to condemn the entire 8.712 acre parcel of property for the purpose of constructing a rest area and visitor center:

> Q. As I understand it, you [Cecilia Vaniman] do not contest the authority of the State of Montana to condemn property for rest areas and informational sites, is that correct?
>
> A. That's correct.
>
> Q. So the only contest here has to do with the fact that the City and the chamber have been talking about putting their corporate offices there, is that correct?
>
> A. That's correct.
>
> . . .

6

Q.   Okay.  You understand, don't you, from [the architect's] testimony Friday, that if the rest area were put in this same location next to [the highway off-ramp], it would still require the total taking, is that correct?

A.   That's my understanding of their design, yes.

Q.   Okay.  So the fact that the chamber offices are in there actually has no effect on your interest in the property.  If they took the chamber office out but still put the rest area there, you would have no objection, correct?

A.   It's my understanding that it wouldn't make any difference.

Q.   My question is, if there were no chamber office there, then from what you just said, you wouldn't object to the placing of the rest area there?

A.   That's correct.

Q.   And if it had an informational site but no offices, you wouldn't object, is that correct?

A.   That's correct.

The record also discloses that the District Court acknowledged the State's authority to condemn the Vanimans' property, but had reservations about the validity of the Chamber's involvement in the project:

> [The court's] question is this:  We are contemplating a total taking here, in any event.  The issue seems to narrow itself down to whether or not out of the 7,000 square feet of the visitor center it's going to be permissible to have 2,000 square feet of that utilized by the chamber of commerce.  That has no effect, if I recall a question I made of a witness, on the taking.  They're going to take it regardless.  Query:  Do I have to rule on the validity of the use of that 2,000 square feet by the chamber of commerce?

In its findings of fact the court noted:

7

5. Plaintiffs contemplate that the Bozeman Area Chamber of Commerce, a private, non-profit corporation will occupy a portion of the information/visitor center building . . . . In addition, there has been discussion between the City of Bozeman, and the Chamber of Commerce concerning devoting about thirty percent (30%) of the area of the building constructed for the information/ visitor center for utilization by the Chamber for its corporate offices--in return for which the Chamber will pay the City the sum of $200,000.00, and provide staffing for the information/visitor center.

The State of Montana has informed the City of Bozeman that Federal Department of Transportation funding for the project cannot be used to fund the corporate offices of the Chamber of Commerce. Section 70-3-111 M.C.A. generally requires that property may be condemned only in the public interest, for public purposes. Section 60-5-110 M.C.A. specifically provides that, with the exception of motorist information signs, no commercial enterprise or structure shall be constructed or operated on the publicly owned right-of-way of a controlled access highway or facility.

In its conclusions of law, the court deferred judgment on the question of whether the Chamber, in agreement with the City, intends to occupy a portion of the visitor center:

9. The use and operation of a portion of the information/visitor center site by the Bozeman Chamber of Commerce for its corporate offices is not specifically before the Court in this proceeding. There is no contract between the Plaintiffs and the Chamber, and for the Court to rule on the validity of such arrangement, it would necessarily have to base its ruling on conjecture, and not being so disposed, the Court refuses to rule on the issue.

Concomitant with the above finding and conclusion, several pieces of evidence contained in the record prove the existence of the City of Bozeman and the Chamber's intent to enter into an agreement to locate the Chamber's corporate offices at the proposed rest area and visitor center:

8

- the Chamber's Articles of Incorporation document, filed with the Secretary of State, which sets forth the commercial activity of the Chamber.

- a copy of the Chamber's annual report, containing a Bozeman Daily Chronicle news item which refers to the visitor center Chamber office.

- a January 10, 1992 letter from the City of Bozeman Public Service Director to the Chamber, clearly specifying the plan to utilize a portion of the visitor center structure for Chamber offices.

- an April 1, 1992 letter from the Chamber president to the City manager which states the Chamber is "committed to go ahead with the visitor's center/chamber office project . . . ."

- a March 10, 1993 "Memo of Understanding" between the City of Bozeman and the Chamber setting forth additional City/Chamber agreements, including a fifty-year lease (for one dollar per year) of the Chamber portion of the visitor center, and the agreement that the Chamber will pay $200,000 toward that portion of the visitor center to be utilized for its offices.

- the direct testimony of the Chamber's Chairman, stating that the Chamber has negotiated a buy/sell agreement to sell its current office space, and that the closing is contingent upon the Chamber relocating in the visitor center.

We hold that it was error for the District Court to fail to consider this evidence when determining whether the respondents validly exercised their eminent domain power over the Vanimans' property. The court, in so doing, violated the Vanimans' due process rights. We therefore reverse the court's preliminary condemnation order and conclusions of law as they relate to the Chamber's participation in the North 19th Avenue Interchange Project and remand the case for proceedings consistent with this

9

opinion, specifically to determine whether the Chamber's involvement is de minimis.

Reversed and remanded.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

10

March 1, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Michael G. Garrity, Esq.
Kirwan & Barrett, P.C.
P.O. Box 1348
Bozeman, MT 59771-1348

Peter S. Lineberger, Esq.
Lineberger, Walsh & McKenna, P.C.
P.O. Box 6400
Bozeman, MT 59771-6400

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy