No. 94-625

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

CITY OF BOZEMAN, MONTANA,
A MUNICIPAL CORPORATION,
ACTING ON BEHALF OF THE
DEPARTMENT OF TRANSPORTATION
OF THE STATE OF MONTANA,

      Plaintiffs, Respondents,
      and Cross-appellants

   -v-

DONALD D. VANIMAN and CECILIA R.
VANIMAN, CO-TRUSTEES of STEELHEAD
RANCHES, A TRUST,

      Defendants and Appellants.

FILED

JUN 29 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Eighteenth Judicial District,
                 In and for the County of Gallatin,
                 The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

      For Appellants:

         Michael G. Garrity, Anacker & Garrity, Bozeman,
Montana

      For Respondents:

         Peter S. Lineberger, Spokane, Washington


                  Submitted on Briefs:  April 6, 1995

                      Decided:  June 29, 1995

Filed:

_____
           Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a decision by the Eighteenth Judicial District Court, Gallatin County, determining that the State had lawfully exercised its power of eminent domain, but that the Bozeman Chamber of Commerce could not be part of the planned highway interchange building complex. We affirm.

We consider the following issue:

Did the District Court err in finding that the State had lawfully exercised its **power of eminent** domain but that the Bozeman Chamber of Commerce could not be part of the planned highway interchange building complex?

The City of Bozeman (City), acting on behalf of the Montana State Department of Transportation (State), sought to have an 8.72 acre piece of property owned by Donald and Cecilia Vaniman (the Vanimans) condemned for the purpose of creating an off-ramp and rest area/visitors center for the North 19th Avenue Interchange at Interstate Highway 90. In its complaint for condemnation, the State did not mention that part of the visitor center was a planned area for the Bozeman Chamber of Commerce. The Chamber is a private non-profit organization. Despite their agreement with the stated purposes of the condemnation, the Vanimans objected to the Chamber's presence.

On July 2, 1993, the District Court issued a Preliminary Condemnation order stating that the issue of the Chamber's presence within the 8.72 condemned acres was not before it. This order was appealed and in the City of Bozeman v. Vaniman (1994), 264 Mont.

76, **869** P.2d 790, we stated that the District Court's failure to consider the Chamber's presence within the project denied the plaintiffs due process and prevented us from **considering** the appeal. We remanded the action for the court's consideration of the Chamber's presence and for a determination of whether the Chamber's presence was "de minimus."

Following a hearing on May 12, **1994,** the District Court ordered that the wing of the building in which the Chamber was to reside should be severed from the plans and that the Chamber have no part in locating its private corporate offices on any section of the condemned property. The evidence presented at the hearing lead the court to determine that the Chamber's offices would amount to **40%** of the building set to be built at the interchange area. Such a presence, the court found was not de minimus. The Vanimans have appealed the court's decision.

## Standard of Review

The court's findings on remand will be considered as to whether they are clearly erroneous and the court's conclusions of law will be considered as to whether they are correct. <u>Vaniman,</u> 264 Mont. at 80, 869 P.2d at 793. Clearly erroneous is defined by whether a finding is supported by substantial evidence, whether the court correctly apprehended the evidence, or, despite the satisfaction of the first two elements, whether we are of the firm conviction that a mistake has been made. <u>Vaniman,</u> 264 Mont. at 80, 869 P.2d at 793.

**Did** the District Court err in finding that the State had

3

lawfully exercised its power of eminent domain but that the Bozeman Chamber of Commerce could not be part of the planned highway interchange building complex?

The Vanimans argue that the District Court should have dismissed the condemnation action instead of modifying the State's design by severing the Chamber's wing of the visitors' center. The Vanimans contend that the court acted outside its jurisdiction by modifying the design approved by the State. According to the Vanimans, the government cannot take a property for combined public/private use. The Vanimans argue that because the Chamber's presence is not de minimus the entire taking is unlawful and the initial condemnation order should be dismissed. The Vaniman's assert that the only question that the District Court had to answer was whether the Chamber's role was "de minimus."

The City argues that this Court's first opinion was not as narrow as the Vanimans have stated. The City contends that on remand the District Court had to determine the appropriate balance of public versus private use within the interchange project. Further, the City argues that the court did not engage in project redesigning--it did not consider specific aspects of the design project and then attempt to change these aspects. The City also argues that it was the Vanimans themselves who introduced evidence regarding the design of the building and have, therefore, waived any right to object to the court's consideration of that design.

This Court remanded the action back to District Court because the court had not considered any evidence of the Chamber's

4

involvement with the case.  Vaniman, 264 Mont. at 83, 869 P.2d at 794.   The court was directed to consider further proceedings consistent with our opinion.  That opinion dealt with more than the de minimus rule.

## De Minimus

When a legal matter is termed "de minimus," it means that courts need not consider it because the matter is "trifling" or too minor to be considered in the interest of judicial economy. Hopkins v. Kitts (1908), 37 Mont. 26, 94 P. 201; Section 1-3-224, MCA.   By telling the District Court that it had to make this determination, we instructed the District Court to consider the Chamber's involvement in the case, which the court had not done, and then to make a determination after considering the facts before it as to whether the matter was substantial enough to be considered in any court of law.  A designation that an issue is not de minimus means that it is a matter of consequence and that the issue should be considered by the court.

The District Court found that the Chamber would occupy 40% of the building as currently planned.  The court also found that the Chamber said that it would pay $200,000 for its part of the building.  However, the facts indicate that the Chamber's portion of the building would cost twice that amount.   The facts also indicate that the federal government denied payment for any portion of the Chamber's offices.  That leaves approximately $200,000 of the Chamber's offices unfunded.  Therefore, the District Court was not clearly erroneous by finding that the Chamber's involvement in

5

the project was not de minimus and that **it** should consider the effect that the Chamber, a private corporation, would have on an otherwise public project

### Private v. Public Use

The District Court recognized that it was required to make more than the de minimus ruling. The court understood that our remand without a ruling meant that the substantive issues involved in an eminent domain case were still subject to appeal if the issue of the Chamber's presence was not de minimus. The court stated:

> On March 1, 1994, the Montana Supreme Court remanded the case to this Court . requiring that the Court consider the evidence of the Chamber's involvement in the project when determining whether the Plaintiffs validly exercised their eminent domain power over the Vaniman's property, and " . to determine whether the Chamber's [Bozeman Area Chamber of Commerce] involvement is de minimus." . . . A de minimus inquiry in this case, does not involve itself with "incidental private benefit" which arises where a lawful taking of private property by condemnation indirectly yields an incidental private benefit, but gets directly to the validity of the Bozeman Chamber of Commerce's proposed direct "participation" by privately using part of the property being condemned. Consequently, this Court construes the specific directions in the Supreme Court's Opinion as holding that this Court must specifically rule on whether the Chamber's "participation" (even though not fixed by an executed contract) impacts the validity of the entire **eminent** domain proceeding, <u>before</u> it issues a Preliminary Condemnation Order.

In its September, 1994, Memorandum and Order following remand, the court determined that the condemnation of the 8.72 acres of the Vaniman property was necessary and for a public purpose and, therefore, appropriate, but that the Chamber's involvement in the project was not appropriate and must be excised because it constituted a "private" and not a public use. The court then

6

ordered that the Chamber could no longer be part of the project.

According to the Vanimans, the court's action of severing the Chamber's offices from the visitor center plans was beyond the court's jurisdiction. While the Vanimans characterize this action on the part of the court as a "redesigning" of the visitor center, such is not the case. The court specifically stated that:

> FOF 11. The current architectural development schematic drawings of the information/visitor center, on which many of Defendant's objections are based, were prepared in April, 1993. These schematic drawings represent early preconstruction designs which can readily be, and often are, changed before any construction occurs. Though such schematic drawings indicate that the Chamber's <u>private</u> corporate offices are a part of the information/visitor center building, no bids have been let on the construction of the rest area and information/visitor center, and no work whatsoever has commenced on this schematically designed building.

> FOF 14. "Schematic drawings are those usually prepared when only about 15% of project completion is reached. Here, no work whatsoever has begun or is completed regarding the proposed building's construction. Such "schematic" drawings are not now, and never were, a part of the State's Condemnation Order of March 24, 1993, nor a part of Plaintiffs Complaint for Condemnation in this action.

Thus, it is clear that the court was aware that the plans from which it "severed" the Chamber's offices were early plans and that later plans would follow. We interpret the court's severance of the Chamber's offices, not as a redesigning of the building--which would be a permanent and final change--but an indication that the Chamber's offices must not appear in future plans for the building.

The record substantiates the court's findings. Testimony from the hearing on remand indicates that all connected with the project knew that the plans introduced into evidence were only preliminary

7

plans and that other final plans would follow. Therefore, substantial evidence supports the court's findings. Further, the court correctly apprehended the evidence and we are not left with a firm conviction that an error has been made. The court was not, therefore, clearly erroneous.

The Vanimans argue that legally the court could not modify plans that had already been approved by the State but that the court **must** negate the entire condemnation because the State had in essence condemned a property for private use. The court's legal determination to sever the Chamber's offices was an outgrowth of its determination that the Chamber was a private organization and that its participation in the visitors' center built on land that had been taken by **eminent** domain was inappropriate.

Our **statutes** declare that in order for eminent domain to be appropriate, the land taken **must** be put to a "public use." Section 70-30-101, MCA. The District Court determined that the use of the Vaniman property for a highway interchange and a visitor center was expressly provided for in our statutory system. We stated as much in <u>Vaniman I. Vaniman,</u> 264 Mont. at 80, 869 P.2d at 793. There is no question that the proposed project for Interchange 19 is a public use according to our statutory list of appropriate public uses in § 60-4-103, MCA. The pivotal concern is whether the Chamber's presence within a building on land condemned for public use requires that the entire eminent domain action be negated.

The court concluded that the Chamber's portion of the visitors' center was a private use and was constitutionally

8

offensive, but that the rest of the project could stand. The court concluded that the Chamber had no authority to participate in an otherwise public project and that "[t]he Chamber shall have no right to locate or operate its private corporate business on any portion of the property acquired from Defendants in this eminent domain proceeding." The court then granted the request for the preliminary condemnation order of the 8.72 acres for the purpose of an interchange and visitor center.

We have stated that: "It is well established that a condemning authority can not acquire a greater interest or estate in the condemned property than the public use requires." Silver Bow County v. Hafer (1975), 166 Mont. 330, 332, 532 P.2d 691. Here, the record shows that whether the Chamber is included in the plans or not, the same amount of land will be taken. This fact is not disputed by the Vanimans nor any official connected to the governmental entities involved. Therefore, the condemnation order is appropriate for 8.72 acres so long as the purpose for which the property condemned is appropriate.

It is also not disputed that the uses of a highway interchange and visitors center constitute a "public use" required by our eminent domain statute. Sections 70-30-101, MCA, and 60-4-103, MCA. The record shows that the original condemnation complaint filed by the State mentions only the use of the interchange and the visitors' center/information center. Thus, the complaint was properly granted because the use was public, the State had the right to eminent domain, and the proper procedures were followed.

However, the Chamber is a private corporation. Whether its involvement began before or after the issuance of the complaint is of little concern because there is no question from the record that at some point the Chamber offices became a substantial part of the building to be erected on the condemned property. We pointed this out to the court and on remand the District Court determined, based upon the testimony at the May 12, 1994, hearing, that the Chamber's portion of the visitors' center amounted to about 40% of the area anticipated for the building.

The State provided adequate evidence that the project was appropriate; it then became the Vaniman's burden to prove by clear and convincing proof that the taking by the government was excessive or arbitrary. Lincoln/Lewis & Clark Co. Sewer v. Bossing (1985), 215 Mont. 235, 696 P.2d 989. The Vanimans attempted to prove the State's actions as arbitrary or excessive by submitting evidence of the size and nature of the Chamber's portion of the building. Yet, there is nothing whatsoever in the record to disprove the State's contention that the taking of the 8.72 acres for an interchange and visitor center is appropriate or that the taking would be less if the Chamber were not part of the project. The Chamber was not mentioned in the original complaint for condemnation. The purpose in the complaint was public, to that all agree.

The Chamber's participation is a collateral concern and does not change the public use designation of the project as proved to the court. The Chamber is a private business. It is a fundamental

10

law of eminent domain that private property may not be taken without an owner's consent for the private use of another. McTaggart v. Montana Power Co. (1979), 184 Mont. 329, 602 P.2d 992. Further, both the United States and the Montana Constitutions prohibit a taking by the State for merely private use. U.S. Const., amend. XIV; Art. II, Sec 17, Mont.Const. (1972)

In certain cases, a public use and a private use can be commingled without a finding of unconstitutionality. J. Sackman & P. Rohan, 2A Nichols Law of Eminent Domain, The Public Use, § 7.08 (1990). In considering whether the private nature of the Chamber's business is appropriately allowed as a part of the public purposes of the visitors' center/information center we consider the following:

> If the use for which land is taken by eminent domain is public, the taking is not invalid merely because an incidental benefit will enure to private individuals. . The use for which the property is acquired by eminent domain must ordinarily be the use of the condemnor. . . . [An] ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use. Moreover, where, despite the commingling of private and public uses, the taking will aid in the establishment of a public project, the courts are disposed to ignore the private element as purely incidental . . . .

J. Sackman & P. Rohan, 2A Nichols Law of Eminent Domain, Public Use, § 7.08 (1990). In analyzing when a private use is appropriate within an eminent domain taking, we adopt this analysis and compare the Chamber's use by this three-tiered standard:

1. Will the public use create an "incidental" benefit to private individuals?

2. Is the overall use that of the condemnor?

11

3.    Is the private use insignificant?

An analysis of all three elements shows that the Chamber's presence is inappropriate within this public project. First, the Chamber's corporate offices are not incidental to the project. In other words, its presence is not a necessary derivative of the visitor center and highway interchange. Any benefit that the Chamber derives from having its offices located at this Interchange is in no way connected to the public use of the highway or the rest area/visitor center. The Chamber's presence may be "convenient" for the Chamber as well as the State, but that is not the test. The test is whether any benefit to the Chamber comes as a necessary correlary to the public purpose. The record indicates no such benefit.

Second, the use for which the land is taken **must** be that of the State. If the Chamber occupies a major portion of the visitor center, then the use is not that of the State. Finally, the record indicates that the Chamber's presence is not insignificant; it will occupy **a major** part of the visitor center. Therefore, we conclude that the Chamber's private presence within this otherwise public project cannot stand as the Chamber cannot meet the elements of the above test in any way.

In other fact situations, such a determination could mean that the entire condemnation would fail or that the taking would have to be limited. Under the facts of this case, the loss of the Chamber's participation does **not limit** the taking. All agree that the same amount of land must be taken regardless of the Chamber's

12

presence.  Further, the complaint and order of possession do not mention the Chamber and the plans which include the Chamber offices are only preliminary to the project.

We conclude that the District Court correctly granted the preliminary condemnation order because the Chamber's presence was not a part of the request for condemnation.  We hold that the court did not err in finding that the State had lawfully exercised its power of eminent domain but that the Bozeman Chamber of Commerce could not be part of the planned highway interchange building complex.

Affirmed.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
                Justices

13

Justice James C. Nelson specially concurs.

While I do not necessarily agree with all that is stated in our opinion, under the circumstances of this case, I conclude that we have reached the appropriate result. While the Vanimans contend on this appeal that the District Court exceeded our remand order in _Vaniman I,_ by excising the Chamber's participation in, and its portion of the building from, the project, nevertheless, I conclude that appellants are in no position to complain.

As we pointed out in our opinion in _Vaniman I,_ appellant Cecilia Vaniman conceded at the outset that the State had the authority to condemn the entire 8.712 acre parcel of property for the purpose of constructing a rest area and visitor center; that even if the Chamber were not part of the project, the entire acreage would nevertheless be condemned; and that she had no objection to the project but simply to the Chamber's involvement in it. _Vaniman,_ 869 P.2d at 793.

Accordingly, I specially concur.

_____
                                    Justice

Justice Karla M. Gray concurs in the foregoing special concurrence.

_____
                                    Justice