CHIEF JUSTICE GRAY
delivered the Opinion of the Court.
¶1 McCabe Petroleum Corporation filed an action in the United States District Court for the District of Montana seeking to condemn an access easement and right-of-way across lands owned by N Bar Ranch, LLC. Pursuant to Rule 44, M.R.App.P., the United States District Court certified two questions of Montana law to us, which we restate as follows:
¶2 1. Is exploration and development of a federal oil and gas lease a “mine” which constitutes a “public use” under § 70-30-102(33), MCA?
*386 ¶3 2. Does § 82-2-201, MCA, grant the owner of a federal oil and gas lease power as the owner of a “mining claim” to condemn a right-of-way across land of another for access to explore and develop the oil and gas lease?
¶4 Our answer to the first certified question is “no” and, for reasons which will become apparent, we do not address the second question.
BACKGROUND
¶5 McCabe holds United States oil and gas leases covering lands in Fergus County, Montana. N Bar Ranch owns property adjacent to the land covered by McCabe’s leases. In its federal court action, McCabe seeks to condemn an easement and right-of-way over the property owned by N Bar Ranch to allow it access to drill and operate oil wells. ¶6 N Bar Ranch moved to dismiss McCabe’s condemnation action on the basis that the complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6), Fed.R.Civ.P. N Bar Ranch contended McCabe’s proposed activities are not a “public use” within the meaning of § 70-30-102(33), MCA, and that § 82-2-201, MCA, does not grant McCabe the power of eminent domain. Following briefing, the United States District Court certified the above-restated questions to this Court and we accepted them for response.
DISCUSSION
¶7 Is exploration and development of a federal oil and gas lease a “mine” which constitutes a “public use” under § 70-30-102(33), MCA?
¶8 Eminent domain is the right of the state to take private property for public use. Section 70-30-101, MCA. Private individuals and corporations, like state agencies, have no inherent power of eminent domain, and their authority to condemn must derive from legislative grant. Montana Talc Co. v. Cyprus Mines Corp. (1987), 229 Mont. 491, 495, 748 P.2d 444, 447.
¶9 The general public uses for which the Montana Legislature has granted the. power of eminent domain are enumerated in § 70-30-102, MCA, a statute first enacted in 1877. McCabe argues that an access road to explore and develop landlocked federal oil and gas leases is a “public use” for which the power of eminent domain may be exercised under § 70-30-102(33), MCA, which provides that “roads, tunnels, and dumping places for working mines, mills, or smelters for the reduction of ores” are a public use. McCabe asserts that potential oil wells are “mines” under the above statute. It relies on Montana Talc for its substantive argument and also for its contention that the public uses *387 delineated in § 70-30-102, MCA, should be interpreted broadly. We turn first to the latter contention.
¶10 In the 1987 Montana Talc decision, 229 Mont, at 498, 748 P.2d at 448, the Court stated it was not aware of any Montana judicial decision declaring that the public uses set forth in § 70-30-102, MCA, are to be strictly construed. While the Court technically may have been correct about the “strictly construed” language, prior authority on the subject apparently was overlooked.
¶11 We addressed the appropriate interpretation of statutory public uses in State v. Aitchison (1934), 96 Mont. 335, 30 P.2d 805. In that case, the plaintiffs seeking to exercise the power of eminent domain conceded-based on existing case law-that authority to condemn must be “expressly given or necessarily implied.” They sought to proceed on the “necessarily implied” theory. Aitchison, 96 Mont. at 337-38, 30 P.2d at 806 (citation omitted).
¶12 In discussing eminent domain powers, we cited to authorities stating clearly that the eminent domain power being against common right, it cannot be implied or inferred from vague or doubtful language, and that the right to exercise that power does not exist when made out only by argument or inference. Aitchison, 96 Mont. at 339, 30 P.2d at 807. We also observed that all prior cases had held against extending the right of eminent domain under a theory that the power had been granted by implication. Aitchison, 96 Mont. at 340, 30 P. 2d at 807 (citations omitted). Thus, while not using the “strictly construed” language, it is clear that case law prior to Montana Talc took a narrow approach to interpreting the statutorily-delineated public uses.
¶13 The Montana Talc Court went on to reference § 1-2-103, MCA, to the effect that statutes are to be liberally construed and, in addition, that “[n]o interpretation is required when the plain meaning can be derived from the words of the statute.” Montana Talc, 229 Mont. at 498, 748 P.2d at 449. It is difficult to mesh the Montana Talc Court’s use of both the”liberal construction” and “plain meaning” terminology. Because of subsequent case law, however, it is unnecessary to attempt to do so.
¶14 In City of Bozeman v. Vaniman (1994), 264 Mont. 76, 869 P.2d 790, we again addressed the power of eminent domain. There, a unanimous Court stated clearly and without equivocation that “[t]he legislature’s grant of the eminent domain power ... must be strictly construed.” Vaniman, 264 Mont. at 79, 869 P.2d at 792 (citation omitted). Because private real property ownership is a fundamental right under the Montana Constitution, “any statute which allows [the *388 taking of] a person’s property must be given its plain interpretation, favoring the person’s fundamental rights.” Vaniman, 264 Mont, at 79, 869 P.2d at 792. Thus, while not involving a “public use” issue, Vaniman is this Court’s latest and clearest statement regarding the interpretation of the power of eminent domain. We conclude, therefore, that fundamental real property rights require that “public uses” for which the power of eminent domain are granted must be interpreted pursuant to the plain language set forth by the Legislature and cannot be implied.
¶15 McCabe’s first substantive argument is that Montana Talc is controlling authority for its proposition that potential oil wells are “mines.” We disagree.
¶16 In Montana Talc, we addressed whether the power of eminent domain could be used to condemn land for an open pit talc mine. We determined that, under § 70-30-102(15), MCA (1985), an open-pit excavation necessary to “backslope” the mining of an ore body is an authorized public use. See Montana Talc, 229 Mont. at 496, 748 P.2d at 447. Section 70-30-102(15), MCA (1985), is now recodified in substantially similar language in § 70-30-102(44), MCA, which provides in pertinent part that authorized public uses are “projects to mine and extract ores, metals, or minerals owned by the condemnor located beneath or upon the surface of property where the title to the surface vests in others.”
¶17 In Montana Talc, the company seeking condemnation was the owner of the body of talc ore and sought to open-pit mine that ore; to do so, it was necessary for the company to “backslope” the mine over land owned by Cypress Minerals Corporation. The Court merely applied the statute to the facts before it, and concluded that, “[f]or the purpose of mining that ore body, Montana Talc therefore has the power of eminent domain.” Montana Talc, 229 Mont. at 496, 748 P.2d at 447.
¶18 In the present case, McCabe does not rely on § 70-30-102(44), MCA. Thus, in addition to the facts that Montana Talc did not involve oil and gas leases or wells and did not hold that oil and gas exploration is “mining” under Montana’s eminent domain statutes, the entire basis ofthe Montana Talc analysis was a different subsection of § 70-30-102, MCA, than is now at issue. That subsection is not applicable here. For those reasons, Montana Talc is neither controlling nor particularly relevant here.
¶19 McCabe also relies on this Court’s statements in Mid-Northern Oil Co. v. Walker (1922), 65 Mont. 414, 427, 211 P. 353, 356, and Rice *389 Oil Co. v. Toole County (1930), 86 Mont. 427, 431, 284 P. 145, 146, respectively, that “oil is a mineral, and ... an oil well is a mine[,]” and “[o]il is a mineral and the process of extracting it from the rocks is mining.” According to McCabe, these statements support its contention that a mine, as the term is used in § 70-30-102(33), MCA, includes an oil well and, as a result, it is authorized to proceed to condemn a road needed to develop oil wells pursuant to its federal leases across N Bar Ranch’s property. McCabe’s reliance on Mid-Northern and Rice is misplaced.
¶20 In Mid-Northern, an oil company sought an injunction restraining the state board of equalization from enforcing an annual license tax against it. Mid-Northern, 65 Mont, at 420-21,211P. 354. Rice involved an action to recover a portion of an oil well net proceeds tax paid to Toole County. Rice, 86 Mont, at 430,284 P. at 145. Thus, in both cases, our characterizations of an oil well as a mine were made within the context of tax litigation, not eminent domain statutes which expressly enumerate the public uses for which condemnation proceedings can be maintained. Definitions from other sources are not readily impoi'ted into the eminent domain arena. See Richter v. Rose, 1998 MT 165 ¶¶ 18-20, 289 Mont. 379, ¶¶ 18-20, 962 P.2d 583,¶¶ 18-20. One of the reasons, of course, is the clash between real property rights and the power of eminent domain.
¶21 Moreover, the statements in both Mid-Northern and Rice are premised on Burke v. Southern Pac. R. Co. (1914), 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527, a case in which the United States Supreme Court addressed several questions concerning the Southern Pacific Railroad Company’s title to mineral lands patented under the authority of a railroad land grant. One of the issues was whether petroleum or mineral oil was included within the meaning of the term “mineral” as it was used in acts of Congress reserving mineral land from railroad grants. Burke, 234 U.S. at 676, 34 S.Ct. at 910, 58 L.Ed. at 1543. The Supreme Court analyzed the issue by addressing the manner in which the term “mineral” had been used in the federal laws reserving mineral lands from railroad land grants. Burke, 234 U.S. at 679, 34 S.Ct. at 911, 58 L.Ed. at 1544. No federal statutes are at issue here. Furthermore, § 70-30-102(33), MCA, unlike § 70-30-102(44), MCA, does not contain the word “mineral.”
¶22 McCabe also relies on Coronado Oil Co. v. Grieves (Wyo. 1979), 603 P.2d 406, in which the Wyoming Supreme Court held that the interests of a federal oil and gas lessee permit the lessee to condemn private property to obtain a right-of-way to its landlocked oil and gas *390 leases. The Coronado court noted that Article I, Section 32 of the Wyoming Constitution allows the taking of private property for private use for private ways of necessity. It determined the Wyoming constitutional provision is broad enough to cover the proposed condemnation activity by the oil and gas lessee. Then, in reaching what it termed “a reasonable and sound construction which carries out the intent of the constitution and related statutes,” the court interpreted a Wyoming statute allowing condemnation of roadways for “mining” to include allowing condemnation of roadways for the exploration for oil and gas under a federal oil and gas lease. Coronado, 603 P.2d at 410-11. McCabe asserts Coronado is “a compelling legal and common sense precedent.”
¶23 The eminent domain provision of Montana’s Constitution, Article II, Section 29, is not at all similar to the provision of the Wyoming Constitution cited in Coronado: Montana’s Constitution does not allow the taking of private property for private ways of necessity. Indeed, private ways of necessity in Montana may be obtained only by satisfying several criteria. See, e.g., Kullick v. Skyline Homeowners Ass’n, Inc., 2003 MT 137, ¶ 21, 316 Mont. 146, ¶ 21, 69 P.3d 225, ¶ 21; Loomis v. Luraski, 2001 MT 223, ¶ 51, 306 Mont. 478, ¶ 51, 36 P.3d 862, ¶ 51.
¶24 Montana’s constitutional eminent domain provision provides, in pertinent part, that “[pjrivate property shall not be taken or damaged for public use without just compensation to the full extent of the loss having first been made to or paid into court for the owner.” Art. II, Sec. 29, Mont. Const. The primary foci of the constitution are “public use” and “just compensation.” No specific “public uses” are contained in the Montana Constitution either expressly or by implication.
¶25 Montana’s general, substantive and procedural eminent domain statutes are codified in Title 70, Chapter 30, of the Montana Code Annotated. Section 70-30-102, MCA, enumerates 45 public uses for which the right of eminent domain may be exercised. The public use upon which McCabe relies, subsection 33, was first enacted in 1877 and has been carried forward to the present in essentially the same form. See Section 580, p. 189, Montana Territorial Laws of 1877. A general knowledge of Montana history supports the notion that the intent of that mining-related subsection enacted in 1877 was to encompass “hard rock” or “ore” mining, and McCabe presents no argument or evidence suggesting otherwise. Indeed, the language of subsection (33), “roads, tunnels, and dumping places for working mines, mills, or smelters for the reduction of ores” reflects a legislative *391 focus on the kind of mining-related roads necessary to continue the then-existing mining in Montana. See § 70-30-102(33), MCA (emphasis added). The next-enumerated public use, “outlets, natural or otherwise, for the flow, deposit, or conduct of tailings or refuse matter from mines, mills and smelters for the reduction of ores” reinforces that intent. See § 70-30-102(34), MCA (emphasis added). No enumerated public uses in § 70-30-102, MCA, contain explicit language relating to oil and gas wells.
f 26 Title 82 of Montana Code Annotated is entitled “Minerals, Oil, and Gas.” Chapter 1 of Title 82, “General Provisions,” contains no eminent domain provisions. Thereafter, mining and oil and gas exploration are addressed in separate statutory frameworks. Statutes relating to ore mining, including rights-of-way and eminent domain for roads to work mines, are codified in Chapters 2 and 4 of Title 82, MCA. Oil and gas are governed by Chapters 10, 11 and 15 of Title 82, MCA. The only eminent domain provisions in the oil and gas chapters involve underground storage of natural gas. See §§ 82-10-302 through -305, MCA.
¶27 Had the Montana Legislature intended to extend the power of eminent domain to encompass the development of oil wells, it easily could have done so in the portions of Title 82 which apply to the oil and gas industry. It also could have done so in § 70-30-102, MCA. Indeed, the Legislature added numerous new public uses to § 70-30-102, MCA, during the 2001 session and another in the 2003 session. See 2001 Mont. Laws 125; 2003 Mont. Laws 451.
¶28 [3] Finally, McCabe relies on Montana Talc, 229 Mont. at 497, 748 P.2d .at 448 (citing Butte Anaconda and Pacific Railway Co. v. Montana Union Railway Co. (1895), 16 Mont. 504, 41 P. 232), for the proposition that it has long been Montana public policy to foster and encourage the development of mineral resources in every reasonable way. We observe that the discussion to which McCabe refers occurred in the real context of a different subsection of § 70-30-102, MCA, and in the factual context of an ore mine. A court’s role in construing statutes is to declare what is in terms or substance contained therein; not to insert what has been omitted. Section 1-2-101, MCA. Moreover, because eminent domain interferes with the fundamental right of private ownership of real property, any statute which allows a condemnor to take a person’s property must be strictly construed, giving the statute its plain interpretation, but favoring the person’s fundamental rights. Vaniman, 264 Mont. at 79, 869 P.2d at 792.
¶29 Under a plain meaning of the legislative language used, we *392 conclude that oil wells are not “mines” under § 70-30-102(33), MCA, to which rights-of-way for roads may be obtained via eminent domain proceedings. We further conclude that exploration and development of a federal oil and gas lease is not a “mine” which constitutes a “public use” under § 70-30-102(33), MCA. Therefore, our answer to the first certified question is no. Because similar reasoning would apply to the second certified question, whether the owner of an oil and gas lease has power under § 82-2-201, MCA-as the owner of a “mining claim”-to condemn a right-of-way, we do not address that question separately.
JUSTICES COTTER, REGNIER and LEAPHART concur.